# FIRESTONE TIRE & RUBBER CO. *v.* RISJORD

No. 79-1420.   Argued November 12, 1980—Decided January 13, 1981

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, BLACKMUN, POWELL, and STEVENS, JJ., joined. REHNQUIST, J., filed an opinion concurring in the result, in which BURGER, C. J., joined, *post*, p. 380.

*Harvey M. Grossman* argued the cause for petitioner. With him on the briefs was *William Freivogel*.

*John R. Gibson* argued the cause for respondent. With him on the briefs were *Martin J. Purcell* and *Morris J. Nunn.**

JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the question whether a party may take an appeal, pursuant to 28 U. S. C. § 1291,[1] from a district court order denying a motion to disqualify counsel for the opposing party in a civil case. The United States Court of Appeals for the Eighth Circuit held that such orders are not appealable, but made its decision prospective only and there-

---

*Solicitor General McCree, Deputy Solicitor General Frey,* and *Edwin S. Kneedler* filed a brief for the United States as *amicus curiae.*

[1] Title 28 U. S. C. § 1291 provides in relevant part: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."

fore reached the merits of the challenged order. We hold that orders denying motions to disqualify counsel are not appealable final decisions under § 1291, and we therefore vacate the judgment of the Court of Appeals and remand with instructions that the appeal be dismissed for lack of jurisdiction.

I

Respondent is lead counsel for the plaintiffs in four product-liability suits seeking damages from petitioner and other manufacturers of multipiece truck tire rims for injuries caused by alleged defects in their products.[2] The complaints charge petitioner and the other defendants with various negligent, willful, or intentional failures to correct or to warn of the supposed defects in the rims. Plaintiffs seek both compensatory and exemplary damages. App. 6–72.

Petitioner was at all relevant times insured by Home Insurance Co. (Home) under a contract providing that Home would be responsible only for some types of liability beyond a minimum "deductible" amount. Home was also an occasional client of respondent's law firm.[3] Based on these facts, petitioner in May 1979 filed a motion to disqualify respondent from further representation of the plaintiffs. Petitioner argued that respondent had a clear conflict of interest because his representation of Home would give him an incentive to structure plaintiffs' claims for relief in such a way as to enable the insurer to avoid any liability. This in turn, petitioner

---

[2] Pursuant to 28 U. S. C. § 1407, the Judicial Panel on Multidistrict Litigation has ordered these and other suits against multipiece truck tire rim manufacturers consolidated for trial in the United States District Court for the Western District of Missouri. App. 73. ·

[3] The firm included Home in a list of its clients in the Martindale-Hubbell· Law Directory and had occasionally represented the insurer on matters unrelated to the multipiece rim litigation. At the time that petitioner filed its disqualification motion, respondent was defending Home and five other carriers against a suit on certain fire insurance policies. Home does not pay respondent or his firm a retainer.

argued, could increase its own potential liability. Home had in fact advised petitioner in the course of the litigation that its policy would cover neither an award of compensatory damages for willful or intentional acts nor any award of exemplary or punitive damages.[4] The District Court entered a pretrial order requiring that respondent terminate his representation of the plaintiffs[5] unless both the plaintiffs and Home consented to his continuing representation.[6] *Id.*, at 157, 160.

In accordance with the District Court's order, respondent filed an affidavit in which he stated that he had informed both the plaintiffs and Home of the potential conflict and that neither had any objection to his continuing representation of them both. He filed supporting affidavits executed by the plaintiffs and by a representative of Home. Because he had satisfied the requirements of the pretrial order, respondent was able to continue his representation of the plaintiffs. Petitioner objected to the District Court's decision to permit respondent to continue his representation if he met the stated

---

[4] In April 1979 Home sent letters containing similar advice to the defendants in some of the other consolidated suits. The plaintiffs in these other actions were not represented by respondent.

[5] In the alternative, the District Court stated that respondent could terminate his representation of Home in the unrelated matter. See n: 3, *supra.*

[6] The trial court based its determination that a potential conflict existed on its interpretation of Disciplinary Rule 5–105 of the Code of Professional Responsibility, most of which had been adopted verbatim as a local rule of court. That rule prohibits a lawyer from "continu[ing] multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client" except when "it is obvious that he can adequately represent the interest of each and if each consents to the representation . . . ." The District Court agreed with petitioner that it was likely that the dual representation would adversely affect respondent's " 'exercise of his independent judgment . . . .' " App. 160, quoting *International Business Machines Corp.* v. *Levin*, 579 F. 2d 271, 280 (CA3 1978). It therefore ordered that he "either comply with the consent requirement . . . or terminate his representation . . . ." App. 160.

conditions, and therefore filed a notice of appeal pursuant to 28 U. S. C. § 1291.[7]

Although it did not hear oral argument on the appeal, the Eighth Circuit decided the case en banc and affirmed the trial court's order permitting petitioner to continue representing the plaintiffs.[8] *In re Multi-Piece Rim Products Liability*, 612 F. 2d 377 (1980). Before considering the merits of the appeal, the court reconsidered and overruled its prior decisions holding that orders denying disqualification motions were immediately appealable under § 1291. The Court of Appeals reasoned that such orders did not fall within the collateral-order doctrine of *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949), which allows some appeals prior to final judgment. Because it was overruling prior cases, the court stated that it would reach the merits of the challenged order "[i]n fairness to the appellant in the instant case," but

---

[7] The District Court certified its pretrial order on disqualification for interlocutory appeal pursuant to 28 U. S. C. § 1292 (b), which provides in relevant part:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order . . . ."

Neither party elected to proceed under § 1292 (b). Respondent chose to comply with the order rather than appeal. Petitioner chose to appeal the denial of its motion under § 1291 rather than under § 1292 (b). After filing its notice of appeal, petitioner moved that respondent be held in contempt for allegedly failing to comply with the pretrial order, but this motion was subsequently withdrawn.

[8] The Court of Appeals also stated that orders *granting* motions to disqualify counsel would be appealable under § 1291. 612 F. 2d, at 378. That question is not presented by the instant petition, and we express no opinion on it. Neither do we express any view on whether an order denying a disqualification motion in a criminal case would be appealable under § 1291.

held that in the future, appellate review of such orders would have to await final judgment on the merits of the main proceeding.[9]  612 F. 2d, at 378–379.  We granted certiorari, 446 U. S. 934 (1980), to resolve a conflict among the Circuits on the appealability question.[10]

## II

Under § 1291, the courts of appeals are vested with "jurisdiction of appeals from all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court."  We have consistently interpreted this language as indicating that a party may not take an appeal under this section until there has been "a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "  *Coopers*

---

[9] During pendency of its appeal to the Eighth Circuit, petitioner filed a federal-court action against Home, charging that by consenting to respondent's continuing representation of the plaintiffs in the multipiece rim products-liability suits, the insurer had breached its fiduciary duty to petitioner. App. 217.  At the time of oral argument, counsel for petitioner represented that no resolution had been reached in that litigation.  Tr. of Oral Arg. 7–8.

[10] In addition to the Eighth Circuit decision currently before us, five other Circuits now follow the rule that denials of disqualification motions are not appealable. See *In re Continental Investment Corp.*, 637 F. 2d 1 (CA1 1980); *Armstrong* v. *McAlpin*, 625 F. 2d 433 (CA2 1980), cert. pending, No. 80–431, overruling *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.*, 496 F. 2d 800 (CA2 1974); *Melamed* v. *ITT Continental Baking Co.*, 592 F. 2d 290 (CA6 1979) (*Melamed II*), overruling *Melamed* v. *ITT Continental Baking Co.*, 534 F. 2d 82 (CA6 1976) (*Melamed I*); *Community Broadcasting of Boston, Inc.* v. *FCC*, 178 U. S. App. D. C. 256, 546 F. 2d 1022 (1976); ·*Cord* v. *Smith*, 338 F. 2d 516 (CA9 1964).  Five Circuits permit such appeals under § 1291. See *Westinghouse Electric Corp.* v. *Kerr-McGee Corp.*, 580 F. 2d 1311 (CA7 1978); *MacKethan* v. *Peat, Marwick, Mitchell & Co.*, 557 F. 2d 395 (CA4 1977); *Kroungold* v. *Triester*, 521 F. 2d 763 (CA3 1975); *Fullmer* v. *Harper*, 517 F. 2d 20 (CA10 1975); *Uniweld Products, Inc.* v. *Union Carbide Corp.*, 385 F. 2d 922 (CA5 1967), cert. denied, 390 U. S. 921 (1968).

& *Lybrand* v. *Livesay,* 437 U. S. 463, 467 (1978), quoting *Catlin* v. *United States,* 324 U. S. 229, 233 (1945). This rule, that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Cobbledick* v. *United States,* 309 U. S. 323, 325 (1940). See *DiBella* v. *United States,* 369 U. S. 121, 124 (1962). The rule also serves the important purpose of promoting efficient judicial administration. *Eisen* v. *Carlisle & Jacquelin,* 417 U. S. 156, 170 (1974).

Our decisions have recognized, however, a narrow exception to the requirement that all appeals under § 1291 await final judgment on the merits. In *Cohen* v. *Beneficial Industrial Loan Corp., supra,* we held that a "small class" of orders that did not end the main litigation were nevertheless final and appealable pursuant to § 1291. *Cohen* was a shareholder's derivative action in which the Federal District Court refused to apply a state statute requiring a plaintiff in such a suit to post security for costs. The defendant appealed the ruling without awaiting final judgment on the merits, and the Court of Appeals ordered the trial court to require that costs be posted. We held that the Court of Appeals properly assumed jurisdiction of the appeal pursuant to § 1291 because the District Court's order constituted a final determination of a claim "separable from, and collateral to," the merits of the main proceeding, because it was "too important to be denied re-

view," and because it was "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.*, at 546. *Cohen* did not establish new law; rather, it continued a tradition of giving § 1291 a "practical rather than a technical construction." *Ibid.* See, *e. g., United States* v. *River Rouge Improvement Co.*, 269 U. S. 411, 413–414 (1926); *Bronson* v. *LaCrosse & Milwaukee R. Co.*, 2 Black 524, 530–531 (1863); *Forgay* v. *Conrad*, 6 How. 201, 203 (1848); *Whiting* v. *Bank of the United States*, 13 Pet. 6, 15 (1839). We have recently defined this limited class of final "collateral orders" in these terms: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand* v. *Livesay, supra*, at 468 (footnote omitted). See *Abney* v. *United States*, 431 U. S. 651, 658 (1977).

Because the litigation from which the instant petition arises had not reached final judgment at the time the notice of appeal was filed,[11] the order denying petitioner's motion to disqualify respondent is appealable under § 1291 only if it falls within the *Cohen* doctrine. The Court of Appeals held that it does not, and 5 of the other 10 Circuits have also reached the conclusion that denials of disqualification motions are not immediately appealable "collateral orders."[12] We agree with these courts that under *Cohen* such an order is not subject to appeal prior to resolution of the merits.

An order denying a disqualification motion meets the first part of the "collateral order" test. It "conclusively determine[s] the disputed question," because the only issue is whether challenged counsel will be permitted to continue his

---

[11] Counsel for respondent represented at oral argument in this Court that the case was, at that time, in the discovery stage. Tr. of Oral Arg. 35–36.

[12] See n. 10, *supra*.

representation. In addition, we will assume, although we do not decide, that the disqualification question "resolve[s] an important issue completely separate from the merits of the action," the second part of the test. Nevertheless, petitioner is unable to demonstrate that an order denying disqualification is "effectively unreviewable on appeal from a final judgment" within the meaning of our cases.

In attempting to show why the challenged order will be effectively unreviewable on final appeal, petitioner alleges that denying immediate review will cause it irreparable harm. It is true that the finality requirement should "be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered," *Mathews* v. *Eldridge,* 424 U. S. 319, 331, n. 11 (1976). In support of its assertion that it will be irreparably harmed, petitioner hints at "the possibility that the course of the proceedings may be indelibly stamped or shaped with the fruits of a breach of confidence or by acts or omissions prompted by a divided loyalty," Brief for Petitioner 15, and at "the effect of such a tainted proceeding in frustrating public policy," *id.,* at 16. But petitioner fails to supply a single concrete example of the indelible stamp or taint of which it warns. The only ground that petitioner urged in the District Court was that respondent might shape the products-liability plaintiffs' claims for relief in such a way as to increase the burden on petitioner. Our cases, however, require much more before a ruling may be considered "effectively unreviewable" absent immediate appeal.

To be appealable as a final collateral order, the challenged order must constitute "a complete, formal and, in the trial court, final rejection," *Abney* v. *United States, supra,* at 659, of a claimed right "where denial of immediate review would render impossible any review whatsoever," *United States* v. *Ryan,* 402 U. S. 530, 533 (1971). Thus we have permitted appeals prior to criminal trials when a defendant has claimed that he is about to be subjected to forbidden double jeopardy,

*Abney* v. *United States, supra,* or a violation of his constitutional right to bail, *Stack* v. *Boyle,* 342 U. S. 1 (1951), because those situations, like the posting of security for costs involved in *Cohen,* "each involved an asserted right the legal and practical value of which could be destroyed if it were not vindicated before trial." *United States* v. *MacDonald,* 435 U. S. 850, 860 (1978). By way of contrast, we have generally denied review of pretrial discovery orders, see, *e. g.,* *United States* v. *Ryan, supra; Cobbledick* v. *United States, supra.* Our rationale has been that in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling. See *Cobbledick* v. *United States, supra,* at 327. We have also rejected immediate appealability under § 1291 of claims that "may fairly be assessed" only after trial, *United States* v. *MacDonald, supra,* at 860, and those involving "considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand* v. *Livesay,* 437 U. S., at 469, quoting *Mercantile National Bank* v. *Langdeau,* 371 U. S. 555, 558 (1963).

An order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not. The propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits. In the case before us, petitioner has made no showing that its opportunity for meaningful review will perish

unless immediate appeal is permitted. On the contrary, should the Court of Appeals conclude after the trial has ended that permitting continuing representation was prejudicial error, it would retain its usual authority to vacate the judgment appealed from and order a new trial. That remedy seems plainly adequate should petitioner's concerns of possible injury ultimately prove well founded. As the Second Circuit has recently observed, the potential harm that might be caused by requiring that a party await final judgment before it may appeal even when the denial of its disqualification motion was erroneous does not "diffe[r] in any significant way from the harm resulting from other interlocutory orders that may be erroneous, such as orders requiring discovery over a work-product objection or orders denying motions for recusal of the trial judge." *Armstrong* v. *McAlpin,* 625 F. 2d 433, 438 (1980), cert. pending, No. 80–431. But interlocutory orders are not appealable "on the mere ground that they may be erroneous." *Will* v. *United States,* 389 U. S. 90, 98, n. 6 (1967). Permitting wholesale appeals on that ground not only would constitute an unjustified waste of scarce judicial resources, but also would transform the limited exception carved out in *Cohen* into a license for broad disregard of the finality rule imposed by Congress in § 1291. This we decline to do.[13]

---

[13] Although there may be situations in which a party will be irreparably damaged if forced to wait until final resolution of the underlying litigation before securing review of an order denying its motion to disqualify opposing counsel, it is not necessary, in order to resolve those situations, to create a general rule permitting the appeal of all such orders. In the proper circumstances, the moving party may seek sanctions short of disqualification, such as a protective order limiting counsel's ability to disclose or to act on purportedly confidential information. If additional facts in support of the motion develop in the course of the litigation, the moving party might ask the trial court to reconsider its decision. Ultimately, if dissatisfied with the result in the District Court and absolutely determined that it will be harmed irreparably, a party may seek to have the

## III

We hold that a district court's order denying a motion to disqualify counsel is not appealable under § 1291 prior to final judgment in the underlying litigation.[14] Insofar as the Eighth Circuit reached this conclusion, its decision is correct. But because its decision was contrary to precedent in the Circuit, the court went further and reached the merits of the order appealed from. This approach, however, overlooks the fact that the finality requirement embodied in § 1291 is jurisdictional in nature. If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over. A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only. We therefore hold that because the Court of Appeals was without jurisdiction to hear the appeal, it was without authority to decide the merits.[15] Con-

question certified for interlocutory appellate review pursuant to 28 U. S. C. § 1292 (b), see n. 7, *supra*, and, in the exceptional circumstances for which it was designed, a writ of mandamus from the court of appeals might be available. See *In re Continental Investment Corp.*, 637 F. 2d, at 7; *Community Broadcasting of Boston, Inc.* v. *FCC*, 178 U. S. App. D. C., at 262, 546 F. 2d, at 1028. See generally Comment, The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts, 45 U. Chi. L. Rev. 450, 468–480 (1978). We need not be concerned with the availability of such extraordinary procedures in the case before us, because petitioner has made no colorable claim that the harm it might suffer if forced to await the final outcome of the litigation before appealing the denial of its disqualification motion is any greater than the harm suffered by any litigant forced to wait until the termination of the trial before challenging interlocutory orders it considers erroneous.

[14] The United States, in its brief *amicus curiae*, has challenged petitioner's standing to attack the order permitting respondent to continue his representation of the plaintiffs. In light of our conclusion that the Eighth Circuit was without jurisdiction to hear petitioner's appeal, we have no occasion to address the standing issue.

[15] Two other Courts of Appeals that have overruled their precedent and held that orders denying disqualification motions are not immediately ap-

sequently, the judgment of the Eighth Circuit is vacated, and the case is remanded with instructions to dismiss the appeal for want of jurisdiction. See *DiBella* v. *United States*, 369 U. S., at 133.

*So ordered.*

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, concurring in the result.

I agree with the result in this case and the analysis of the Court so far as it concerns the question whether an order denying disqualification of counsel is "effectively unreviewable on appeal from the final judgment." The Court's answer to this question is dispositive on the appealability issue. Since it is completely unnecessary to do so, however, I would not state, as the Court does, *ante,* at 375–376:

> "An order denying a disqualification motion meets the first part of the 'collateral order' test. It 'conclusively determine[s] the disputed question,' because the only issue is whether challenged counsel will be permitted to continue his representation."

In *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541 (1949), Justice Jackson stressed that the order before the Court was "a final disposition of a claimed right" and specifically distinguished a case in which the matter was "subject to reconsideration from time to time." *Id.,* at 546–547. Just recently in *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463 (1978), we held that an order denying class certification was

pealable have similarly made their decisions prospective only and therefore reached the merits of the disputes before them. See *Armstrong* v. *McAlpin,* 625 F. 2d, at 441–442 (citing need to provide guidance to district courts and to avoid waste of judicial resources); *Melamed II,* 592 F. 2d, at 295 (earlier ruling in *Melamed I* established appealability as law of the case). To the extent that the rationales of those cases would allow a court to agree to decide the merits of a case over which it is without jurisdiction, we respectfully disagree.

not appealable under the collateral-order doctrine, in part because such an order is "subject to revision in the District Court." *Id.*, at 469. The possibility that a district judge would reconsider his determination was highly significant in *United States* v. *MacDonald,* 435 U. S. 850, 858–859 (1978), where the Court held that the denial of a pretrial motion to dismiss an indictment on speedy trial grounds was not appealable under the collateral-order doctrine. The Court noted that speedy trial claims necessitated a careful assessment of the particular facts of the case, and that "[t]he denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial—when prejudice can be better gauged—would also be denied."

. It is not at all clear to me, nor has it been to courts considering the question, that an order denying a motion for disqualification of counsel conclusively determines the disputed question. The District Court remains free to reconsider its decision at any time. See *Armstrong* v. *McAlpin,* 625 F. 2d 433, 439 (CA2 1980) (en banc), cert. pending, No. 80–431; *id.*, at 451 (Van Graafeiland, J., concurring in part and dissenting in part); *Fleischer* v. *Phillips,* 264 F. 2d 515, 516–517 (CA2), cert. denied, 359 U. S. 1002 (1959). The Court itself recognizes this possibility, *ante,* at 378–379, n. 13. And in doing so the Court is not only being abstractly inconsistent with its conclusion that the first prong of the *Cohen* test is satisfied. In this very case the possibility of reconsideration by the trial judge cannot be dismissed as merely theoretical. Petitioner's claim is that respondent will advance only those theories of liability which absolve the insurer, or will advance those theories more strenuously than others. Although it is impossible to discern if this is true before trial, the issues may become clearer as trial progresses and respondent actually does present his theories. As in *MacDonald,* it cannot be assumed that a motion made at a

later point in the proceedings—"when prejudice can be better gauged"—will be denied.

Because of what seem to me to be totally unnecessary and very probably incorrect statements as to this minor point in the opinion, I concur in the result only.