**In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, Debtors.**

**The OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY INTERNATIONAL, INC., Plaintiff,**

v.

**MELLON BANK, N.A., et al., Defendants.**

Civ. A. Nos. 88–1709, 88–2521 and 88–2658.

United States District Court, W.D. Pennsylvania.

Nov. 15, 1989.

---

Gary Blum, Reavis & McGrath, New York City, for Official Committee of Equity Sec. Holders.

Robert G. Sable, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for Official Committee of Unsecured Creditors for Allegheny Intern., Inc.

M. Bruce McCullough, Buchanan Ingersoll Professional Corp., Pittsburgh, Pa., for debtor.

David Murdoch and Robert Sommer, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Mellon Bank Group.

Stephen I. Goldring, Pittsburgh, Pa., Asst. U.S. Trustee.

## MEMORANDUM OPINION

BLOCH, District Judge.

These three actions involve appeals of two orders of the Bankruptcy Court concerning an adversary proceeding in the Allegheny International reorganization.[1] The adversary proceeding is captioned *The Official Committee of Unsecured Creditors of Allegheny International, Inc. v. Mellon Bank, N.A., et al.*, 93 B.R. 903 (Bankr.W.D.Pa.1988). The first appeal involves an order appointing the firm of Parker, Chapin, Flattau, and Klimpl (Parker Chapin) to represent the Official Committee of Unsecured Creditors (Creditors Committee) in the adversary proceeding. The second appeal involves an order granting in part and denying in part the Official Committee of Equity Security Holders' (Equity Committee) motion to intervene in the adversary proceeding.

### I. Facts

On February 20, 1988, Allegheny International and four of its subsidiaries filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. On May 3, 1988, fourteen other subsidiaries of Alle-

---

1. Civil Action Nos. 88–1709 and 88–2521 have been consolidated. *In re Allegheny International, Inc.,* No. 88–1709 (W.D.Pa. 11/21/88). Civil Action No. 88–2658 is related to the above consolidated cases.

gheny International filed for relief. Prior to filing its bankruptcy petition, Allegheny International had engaged in an asset disposition program involving transfers of over $440 million of Allegheny International assets to a group of banks. After the bankruptcy filing, questions were raised as to the propriety of these transactions, but Allegheny International chose not to seek legal redress. Subsequently, the Creditors Committee petitioned the Bankruptcy Court for an order allowing it to file an adversary action against the banks on behalf of the debtor.

On April 28, 1988, a hearing was held on this motion. At this hearing, the Creditors Committee asked the Court to appoint special counsel to litigate the adversary proceeding. The Equity Committee did not object to allowing an adversary proceeding to be filed, but did seek to have some say in the adversary action. The Court entered an order allowing the Creditors Committee to file an adversary action. In its order, the Court stated that the adversary action is "to be brought on behalf of and for the use and benefit of the debtor, Allegheny International, Inc. and its bankruptcy estate." *In re Allegheny International, Inc.,* Bankr. No. 88–448 (April 28, 1988). The Court also approved the Creditors Committee's desire to appoint outside counsel, but stated that the Equity Committee was to "have some participation" in the choice of outside counsel. (Tr. 4/28/88, at 23, 31, 40, *In re Allegheny International, Inc.,* Bankr. No. 88–448).

Following this hearing, the Creditors Committee selected Parker Chapin as the firm to litigate the adversary proceeding. The Creditors Committee did not allow the Equity Committee a say in the choice of outside counsel. On June 30, 1988, a hearing was held on the approval of Parker Chapin as counsel. At this hearing, the Equity Committee objected to the appointment of Parker Chapin, claiming that Parker Chapin has a conflict of interest due to its past and present representation of two of the defendant banks in litigation unrelated to the adversary proceeding. (Tr. 6/30/88, at 115–17, *In re Allegheny Inter-*

*national, Inc.,* Bankr. No. 88–448). Specifically, the Equity Committee expressed fears that Parker Chapin's connection with the banks might induce the firm to agree to a settlement which benefits the Creditors Committee but does not benefit the Equity Committee. After hearing arguments on the motion, the Court approved the retention of Parker Chapin. *In re Allegheny International, Inc.,* Bankr. No. 88–448 (June 30, 1988). The Court deemed the alleged conflict a "technical dispute" and stated that the alleged conflict is not "a real one." (Tr. 6/30/88, at 127, *In re Allegheny International, Inc.,* Bankr. No. 88–448). The Court stated that "although there is a conflict ...[,] I'm going to just decide today that it is not a significant conflict and does not effect ... [Parker Chapin's] efforts to vigorously defend the view of the unsecured creditors who, in my opinion, are acting for the estate." *Id.*

On April 29, 1988, the Creditors Committee filed its complaint in the adversary proceeding against the banks. On July 20, 1988, the Equity Committee filed a motion to intervene in the adversary proceeding. The Equity Committee sought to intervene pursuant to Fed.R.Civ.P. 24(a)(1), (a)(2). A hearing was held on this motion on August 25, 1988. On October 7, 1988, the Court entered an order granting in part and denying in part the Equity Committee's motion to intervene. *In re Allegheny International, Inc.,* 93 B.R. 903 (Bankr.W.D.Pa. 1988). The Court held that:

> The first nine counts of the complaint in this case assert theories of fraudulent conveyance and preference. Those counts seek to deprive the Mellon group of their liens in the debtor's assets, thereby maximizing the recovery of all creditors. The last two counts, which aver theories of equitable subordination and breach of the duties of good faith and fair dealing, seek money damages independent of what is owed to creditors. To the extent that the Creditors Committee may settle this litigation for less than the full amount that they have demanded, the funds recovered will inure to the benefit of unsecured creditors, pursuant to the absolute priority rule....

... But if the settlement is less than the amount demanded—a real possibility—equity will be affected, since any hope of a benefit to equity holders hinges upon the successful prosecution of the last two counts. Therefore, we find that the Equity Committee is not adequately represented by the Creditors Committee with respect to the last two counts. We will allow the Equity Committee to intervene as a party-plaintiff in the last two counts of the complaint only.

*Id.* at 907.

Presently before this Court are appeals by the Equity Committee challenging the order appointing Parker Chapin and the order denying their motion to intervene as to the first nine counts of the Creditor Committee's complaint, and by the defendant banks challenging the granting of the Equity Committee's motion to intervene as to the final two counts of the complaint.

## II. Jurisdiction

As a preliminary matter, this Court must examine its jurisdiction over these appeals. These appeals were filed pursuant to 28 U.S.C. § 158(a). This Court has automatic jurisdiction over final judgments, orders, and decrees from the Bankruptcy Court, and with leave of court, this Court also has jurisdiction over interlocutory orders and decrees. No motion has been filed seeking leave of court for appeal jurisdiction pursuant to Bankr.R. 8001(b) for either appeal. Therefore, this Court will first consider whether automatic jurisdiction exists.

The question of finality of bankruptcy orders has been repeatedly pondered by the Third Circuit, but the boundaries of finality remain amorphous.[2] As a general matter, "finality" is considered " 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.' " *F/S Air-*

lease II, Inc. v. Simon, 844 F.2d 99, 103 (3d Cir.) (*quoting In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir.1985)), *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). This is so because " 'bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid a waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.' " *Id.* at 104 (*quoting Amatex,* 755 F.2d at 1039).[3]

However, this relaxed view of finality applies only to the bankruptcy setting as a whole. "[T]he general antipathy toward piecemeal appeals still prevails in individual adversary actions." *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir.1988). "[I]nefficient use of judicial resources is as objectionable in bankruptcy appeals as in other fields." *Id.* Thus, "even in bankruptcy appeals the concept of finality is not open-ended. Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation." *United States v. Nicolet, Inc.*, 857 F.2d 202, 206–07 (3d Cir.1988); *White Beauty View,* 841 F.2d at 526. Additionally, the Third Circuit has stated that the relaxed concept of finality only applies where the order on appeal raises an issue peculiar to bankruptcy. *Nicolet,* 857 F.2d at 207 (applying relaxed standard of finality to order involving the lifting of the automatic stay provision of 11 U.S.C. § 362).

### A. Appointment of Parker Chapin

The Equity Committee has appealed the order of the Bankruptcy Court appointing

---

**2.** The Third Circuit cases dealing with finality have generally concerned the jurisdiction of the Third Circuit to hear appeals of bankruptcy cases from the district courts. However, the same test for finality applies to the jurisdiction of district courts to hear appeals from the bankruptcy courts. *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 104 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

**3.** The Third Circuit has identified four factors to consider in determining finality: (1) the impact of the matter on the assets of the bankruptcy estate; (2) the necessity for further factfinding on remand; (3) the preclusive effect of a decision on the merits on further litigation; and (4) whether the interest of judicial economy will be furthered. *In re Meyertech Corp.,* 831 F.2d 410, 414 (3d Cir.1987).

the law firm of Parker Chapin to represent the Creditors Committee in the adversary proceeding. This order was entered in the main bankruptcy proceeding, but primarily effects the adversary proceeding. Parker Chapin's services have been retained solely for purposes of the adversary proceeding. The order by the Bankruptcy Court does not fully resolve the adversary proceeding involved, but instead allows the adversary litigation to proceed. Additionally, the order does not involve issues peculiar to bankruptcy; on the contrary, the question of disqualification of counsel due to conflicts of interest arises in all areas of litigation. Plus, procession of this litigation will illuminate whether an actual conflict of interest exists. Therefore, the special bankruptcy connotation of "finality" is inapplicable, and the question of this Court's jurisdiction is governed by the ordinary finality precepts of routine civil litigation. *United States v. Nicolet, Inc., supra.*

In the context of general civil litigation, orders denying a motion for disqualification of an attorney are not subject to appeal prior to resolution of the merits of the dispute. *Firestone Tire and Rubber Company v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). As the Court stated:

> An order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not. The propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of the claim of fundamental right that cannot effectively be reviewed following judgment on the merits.

*Id.* at 377, 101 S.Ct. at 675.

■ Accordingly, the Bankruptcy Court's order appointing Parker Chapin is not a final order for purposes of 28 U.S.C. § 158(a). I note that other courts which have considered this issue have reached a similar conclusion. *See In re Delta Services Industries,* 782 F.2d 1267, 1272–73 (5th Cir.1986) (order by bankruptcy court approving employment of counsel for interim trustee is not a final, appealable order); *In re PHM Credit Corp.,* 99 B.R. 762, 765 (E.D.Mich.1989) (bankruptcy court order appointing counsel for the debtor was not a final order for purposes of appeal). Thus, automatic jurisdiction does not exist for this appeal.

■ Although no motion for appeal via leave of court has been filed, this Court may grant leave to appeal at its discretion. Bankr.R. 8003(c). However, this Court is persuaded by *Firestone* that an appeal at this time is premature. Therefore, this Court declines to grant leave of court for an appeal.

Thus, no jurisdiction exists for this appeal. Therefore, the appeal will be dismissed.

### B. Motion to intervene

■ Orders denying an official committee's motion for intervention in adversary proceedings are final, appealable orders. *In re Marin Motor Oil, Inc.,* 689 F.2d 445 (3d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). Therefore, this Court has jurisdiction over the Bankruptcy Court order denying the Equity Committee's motion to intervene.

The Equity Committee contends that although jurisdiction exists over the Bankruptcy Court order to the extent that it denied the motion to intervene, no appellate jurisdiction exists over the order to the extent that it granted the motion to intervene. The Equity Committee finds support for this argument in *Marin* where the Court stated that "an order granting intervention is ordinarily not considered appealable." 689 F.2d at 445. However, regardless of whether automatic jurisdiction exists, considerations of judicial economy and efficiency compel this Court to grant the

defendant banks leave of court to appeal pursuant to Bankr.R. 8003(c).

### III. Intervention Pursuant to Fed.R. Civ.P. 24(a)(1)

■ This appeal involves a legal determination by the Bankruptcy Court. Therefore, this Court's standard of review is plenary. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988).

Fed.R.Civ.P. 24(a)(1) states: "Upon timely application anyone shall be permitted to intervene in an action ... when a statute of the United States confers an unconditional right to intervene...." In *In re Marin Motor Oil, Inc.,* 689 F.2d 445 (3d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983), the Third Circuit held that 11 U.S.C. § 1109(b) grants an official committee an absolute right to intervene sufficient to satisfy Rule 24(a)(1). The Bankruptcy Court acknowledged the mandate of *Marin,* but decided that *Marin* is no longer good law. *In re Allegheny International, Inc.,* 93 B.R. 903, 905–07 (Bankr.W.D.Pa.1988). The Court determined that Bankr.R. 2018 and 7024, which were implemented after the decision in *Marin,* overruled *Marin* by limiting 11 U.S.C. § 1109(b) to the main bankruptcy proceeding, and not to adversary proceedings. Consequently, the Court held that "11 U.S.C. § 1109(b) does not create the independent right to intervene in an adversary proceeding." *Id.* at 906. Although this Court finds merit in the Bankruptcy Court's construction of 11 U.S.C. § 1109(b), this Court is not persuaded that *Marin* was overruled by the adoption of Bankr.R. 2018 and 7024.

Title 11 U.S.C. § 1109(b) states: "A party in interest, including the debtor, the trustee, a creditors committee, an equity security holders committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [Chapter 11]." The *Marin* Court construed the term "case" in § 1109(b) as encompassing not only the general administrative proceeding in a Chapter 11 action, but also adversary proceedings associated with the Chapter 11 action.

Subsequent to *Marin,* Bankr.R. 2018 and 7024 were promulgated. Rule 2018(a) states: "In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Rule 2018 was derived from, *inter alia,* former Bankr.R. 10–210(b). Bankr.R. 2018 Advisory Committee note. Former Rule 10–210(b) stated: "The court may for cause shown permit any interested person to intervene generally or with respect to any specified matter in [a corporate reorganization case]." The language of Rule 2018 and former Rule 10–210(b) is nearly identical. Likewise, Rule 7024 is nearly identical to its predecessor. Rule 7024 states: "Rule 24 F.R.Civ. P. applies in adversary proceedings." Former Rule 724 stated, in pertinent part, "Rule 24 of the Federal Rules of Civil Procedure applies in adversary proceedings...." As an additional matter, 11 U.S.C. § 1109(b) has not been amended since the *Marin* decision.

Thus, looking at the plain language of 11 U.S.C. § 1109(b) and Bankr.R. 2018 and 7024, there is no indication that Congress or the Supreme Court intended to modify the statutory intervention structure which existed prior to the promulgation of Rules 2018 and 7024.

The Bankruptcy Court, however, based its rejection of *Marin* upon the Advisory Committee notes to Rules 2018 and 7024. The Advisory Committee note to Rule 2018 states, in relevant part, "this rule ... implements §§ 1109 and 1164 of the Code.... This rule does not apply in adversary proceedings. For intervention in adversary proceedings, see Rule 7024." The Advisory Committee note to Rule 7024 states: "A person may seek to intervene in the case under the Code or in an adversary proceeding related to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Intervention in a case and inter-

vention in an adversary proceeding must be sought separately."

The Bankruptcy Court determined that the Advisory Committee notes demonstrate congressional intent to distinguish, for the purpose of intervention, between cases and adversary proceedings. *In re Allegheny International, Inc.*, 93 B.R. at 906. The Court apparently decided that since the note to Rule 2018 states that the rule implements 11 U.S.C. § 1109, whereas Rule 7024 does not mention 11 U.S.C. § 1109, § 1109 only applies to proceedings for which Rule 2018 is applicable. Because Rule 2018 does not apply to adversary proceedings, neither does § 1109. A similar decision has been reached by other courts. *See Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286–87 (5th Cir.1985).

The *Fuel Oil* Court determined that because the Advisory Committee note to Rule 7024 mentions both "case" and "adversary proceeding," these terms have separate meanings under the Code. Both the *Fuel Oil* Court and the Bankruptcy Court in the present case, however, failed to consider the discussion in *Marin* concerning the use of the term "case" in 11 U.S.C. § 301 and the term "adversary proceeding" in former Rule 703. "[U]nder 11 U.S.C. § 301, a voluntary case is commenced by the filing of a petition, whereas under Bankruptcy Rule 703, an adversary proceeding is commenced by the filing of a complaint. This simply proves, however, that an adversary proceeding is commenced in a different manner from the case with which it is connected; no one has ever questioned this." *Marin*, 689 F.2d at 450.

This analysis seems equally applicable to the present case. The Advisory Committee note to Rule 7024 can be construed as simply meaning that intervention in the main bankruptcy proceeding does not automatically make the intervenor a participant in all the adversary proceedings associated with the main proceeding. Intervention in these adversary proceedings must be separately sought.

Additionally, although the Advisory Committee note to Rule 2018 states that Rule 2018 "implements" 11 U.S.C. § 1109, Rule 2018(a) concerns permissive intervention whereas § 1109(b) involves intervention as of right. *See Marin*, 689 F.2d at 451 (§ 1109(b) "'[p]rovides, *in unqualified terms*, that any creditor, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest'" (*quoting* S.Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 5902). The Advisory Committee note to Rule 2018 notes that the rule "permits intervention of an entity ... not otherwise entitled to do so under the Code or this rule. Such a party seeking to intervene must show cause therefor." Under § 1109(b), a party in interest need not show cause in order to intervene. Thus, Rule 2018(a) appears to apply to parties *not* governed by § 1109(b). Therefore, the language in the Advisory Committee note stating that Rule 2018 implements § 1109 is at best ambiguous, and does not seem sufficient basis for determining that § 1109 is exclusively limited to proceedings for which Rule 2018 is applicable.

Based upon the foregoing, this Court is not persuaded that Congress has overruled the holding of *Marin*. This determination is supported by an examination of the nature of bankruptcy rules. Bankruptcy rules are promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075. However, the Supreme Court's authority to promulgate rules is limited. Congress has required that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. The *Marin* Court construed 11 U.S.C. § 1109(b) as providing a substantive right to intervene. Therefore, Bankruptcy Rules 2018 and 7024 are incapable of nullifying this substantive right. Alternatively, even if § 1109(b) is construed as a procedural provision, the bankruptcy rules do not limit its effect. Rules promulgated pursuant to 28 U.S.C. § 2075 must be consistent with the applicable bankruptcy statutes. Bankr.R. 1001 Advisory Committee note. Any procedural matters set forth in Titles 11 and 28 of the United States Code prevail over bankruptcy rules. *Id.* Therefore, the argument that the promulgation of Rules

2018 and 7024 modified the scope of § 1109(b) is rebutted by 28 U.S.C. § 2075 and Rule 1001.

As *Marin* is still good law, this Court is bound to follow it. Although persuasive arguments have been made that *Marin* should be reanalyzed, *see Fuel Oil*, 762 F.2d at 1286–87; *In re Charter*, 50 B.R. 57 (Bankr.W.D.Tex.1985); 8 King, *Collier on Bankruptcy* ¶ 7024.03 (15th ed. 1988), the decision to disregard *Marin* must be made by the Third Circuit.

Accordingly, the Equity Committee possesses an unqualified right to intervene in the adversary proceedings. *Marin.* Therefore, the decision of the Bankruptcy Court will be affirmed to the extent that it allowed the Equity Committee to intervene and will be reversed to the extent that the Equity Committee's motion was denied.

This decision should be construed only as allowing the Equity Committee to intervene. Questions of expenses and administration must be controlled by the Bankruptcy Court. As noted by the Third Circuit, the Bankruptcy Court has ample means to control any confusion, disorder, or expense that might result due to the intervention of the Equity Committee. *Marin*, 689 F.2d at 453.

An appropriate Order will be entered.