# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2024

Lyle W. Cayce
Clerk

————————

No. 24-30211

————————

Legacy Recovery Services, L.L.C., *doing business as* Legacy House; Colburn Sullivan; Joe Montgomery; James Gaiennie, III,

*Plaintiffs—Appellants*,

*versus*

City of Monroe; Friday Ellis, *individually and in his official capacity as Mayor of Monroe*; City Council of Monroe; Douglas Harvey, *individually and in his official capacity as Monroe City Council Member*; Juanita Woods, *individually and in her official capacity as Monroe City Council Member*; Carday Marshall, Sr., *individually and in his official capacity as Monroe City Council Member*; Kema Dawson, *individually and in her official capacity as Monroe City Council Member*; Carolus Riley, *individually and in her official capacity as Monroe City Clerk*,

*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:23-CV-697

————————————————————

Before Wiener, Willett, and Duncan, *Circuit Judges*.

No. 24-30211

Per Curiam:[*]

Plaintiffs-appellants Legacy Recovery Services, LLC (d/b/a Legacy House), Colburn (Cole) Sullivan, Joe Montgomery, and James Gaiennie (collectively, appellants) appeal an order from the district court granting in part and denying in part defendants-appellees' motions to dismiss. Because that order was neither a final decision nor an appealable collateral order, we DISMISS this appeal for lack of jurisdiction.

I.

This appeal arises out of a soured negotiation between appellants and the City of Monroe regarding appellants' proposed purchase of public land for use as a residential substance abuse treatment facility.[1] In January 2022, Sullivan, Montgomery, and Gaiennie formed Legacy House to operate a low-level residential treatment center for Medicaid recipients recovering from substance abuse. After researching sites, they settled on the city-owned property at issue in this litigation, a two-story building with fifty-six bedrooms and ample parking, located on two lots at 1400 and 1401 Stubbs Avenue in the City of Monroe. According to appellants, the site is ideal for their intended use because it is located near various other medical facilities, and the only "outlier" in the area is a church adjacent to the property owned and operated by Pastors Daniel and Carolyn Hunt.

Sullivan, acting on behalf of Legacy House, worked with the city and, on March 3, 2022, he and the Director of Administration of the City of Monroe signed a written agreement (the purchase agreement) for Monroe to sell

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] The facts are primarily drawn from the plaintiffs-appellants' complaint because the district court is required to accept well-pleaded facts as correct when deciding a motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

the property for $1,050,000.00. The purchase agreement contained a "Contingency" section, which stated that "the offer to purchase is contingent upon" the city council's approval of the sale. State law also requires that before public property can be sold, the city council must pass an ordinance. Before passing it, the proposed ordinance must be introduced and then publicly noticed, and anyone opposed must file a written opposition with the city clerk within 15 days of the notice. *See* La. R.S. § 33:4712.

On September 13, 2022, the city council held a meeting and moved to introduce the ordinance approving the sale. This motion was seconded, but the chairperson, Kema Dawson, did not put it to vote and instead took public comment on the motion to introduce the ordinance. The council did not actually vote on introducing the ordinance and instead delayed the vote until a community meeting could be held.

That community meeting took place on September 26, 2022, at the Hunts' church. Appellants characterize that meeting as having "served as a platform for several individuals to vocalize their own brand of unsupported, unsubstantiated stigma and innuendo respectively attributed to individuals in active addiction." When the city council reconvened on October 25, 2022, it again put the ordinance for a vote, but no one seconded it, so the chairperson "quietly declared" it dead.

Appellants sued defendants-appellees, bringing nine claims against them relating to the failed sale of the property. Five claims were based on federal laws: (1) the Fair Housing Act (FHA); (2) the Americans with Disabilities Act (ADA); (3) the Rehabilitation Act (RA); (4) the Affordable Care Act (ACA); and (5) 42 U.S.C. § 1983. The remaining four Louisiana state law claims were: (1) violations of the Open Meetings Law; (2) violations of the malfeasance statute; (3) tortious interference with a real estate transaction; and (4) bad faith breach of contract. Appellants assert that the city and

city officials discriminated against the future residents of Legacy House on the basis of their disabilities (alcoholism; substance abuse disorders), and this position forms the foundation for many of their claims.

Defendants-appellees filed several motions to dismiss, and the magistrate judge issued a report and recommendation (the Report) addressing them together, as several defendants-appellees joined one another's motions. In the Report, the magistrate judge recommended granting in part and denying in part the motions to dismiss. Specifically, the magistrate judge recommended dismissing: (1) all claims against the city council because the city itself is the correct entity to sue in this instance; (2) claims against the individual councilmembers in their official capacity because they would be duplicative of the claims against the City of Monroe; (3) the FHA claims; (4) the ADA and RA claims to the extent that they argue failure-to-accommodate and to the extent they are against Ellis, Riley, and the councilmembers in their individual capacities; (5) the ACA claims; (6) some but not all of the § 1983 claims; (7) the Open Meetings Law violations in part; (8) the tortious malfeasance claim; (9) the breach of contract claim; and (10) the claims of interference with a real estate transaction.

Importantly, the magistrate judge recommended *against* dismissing the following claims: (1) the constitutional equal protection claims; (2) some parts of the Open Meetings Law violation claims; (3) the ADA and RA claims based on theories other than failure-to-accommodate; and (4) the § 1983 claims predicated on the ADA and RA violations based on theories other than failure-to-accommodate.

The district judge adopted the magistrate judge's Report, over appellants' objections. This judgment is the one on which this appeal is taken. The claims that were not dismissed are still pending before the district court.

II.

4

This court has jurisdiction over "appeals from all final decisions" from district courts. 28 U.S.C. § 1291. A final decision is "typically one 'by which a district court disassociates itself from a case.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). If the decision is "tentative, informal or incomplete," it is not final and thus not appealable. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The Supreme Court urges a "practical rather than a technical construction" of 28 U.S.C. § 1291's finality requirement, and the collateral-order doctrine operates as a narrow exception which permits appeal of non-final decisions. *Id.*

A non-final decision appealable as a collateral order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) be "effectively unreviewable on appeal from a final judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981) (cleaned up); *see also id.* at 376 ("To be appealable as a final collateral order, the challenged order must constitute a complete, formal, and, in the trial court, final rejection of a claimed right where denial of immediate review would render impossible any review whatsoever.") (cleaned up). This exception is reserved for only "orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430–31 (1985).

Absent satisfying the collateral-order doctrine's requirements, "[s]o long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Cohen*, 337 U.S. at 546.

## III.

The judgment of the district court that appellants appeal is not a final order giving rise to appellate jurisdiction, nor is it a collateral order under that doctrine. The district judge adopted the Report authored by the magistrate

judge, over appellants' objections, and that judgment dismissed some claims but retained others. That is thus not a final decision in which the district court "disassociate[d] itself from [the] case." *Mohawk Indus., Inc.*, 558 U.S. at 106; *Harris v. Nix*, 52 F.3d 1067 (5th Cir. 1995) (per curiam) (holding that "the partial dismissal of a multi-claim action is not a final decision and is unappealable as an interlocutory order absent certification" by the district court.). Therefore, for this court to have jurisdiction over the appeal, the order must satisfy the collateral-order doctrine. It does not.

The district court's judgment does not "conclusively determine the disputed question" because it dismissed some claims but retained others. *See Firestone Tire & Rubber Co.*, 449 U.S. at 375. Furthermore, some of the claims dismissed and others retained were based on the same statutes, such that, if appeal were allowed at this juncture, this court would potentially have to wade through the same intertwined claims a second time after final judgment. For example, the district court dismissed ADA and RA claims only "to the extent that it pertains to Plaintiffs' purported ADA and RA failure-to-accommodate claims." However, it did not dismiss the ADA and RA claims which are based on "imposing procedural barriers against [their] purchase of the Property and denying potential residents of the Facility access to treatment." Similarly, the district court dismissed some claims rooted in the Open Meetings Law that seek punitive or compensatory damages, but it retained the others. This is precisely the "piecemeal" approach to appeals that the Supreme Court discourages. *See id.* at 374 ("Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system."); *Richardson-Merrell, Inc.*, 472 U.S. at 430 ("In § 1291, Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by 'piecemeal appellate review of trial court decisions which do not terminate

the litigation.'") (quoting U*nited States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)); *Abney v. United States*, 431 U.S. 651, 656 (1977) (observing that "there has been a firm congressional policy against interlocutory or 'piecemeal' appeals and courts have consistently given effect to that policy").

For the same reasons just discussed, the judgment does not "resolve an important issue completely separate from the merits of the action," because the issues resolved are interwoven with the issues left for disposition before the district court. *See Firestone Tire & Rubber Co.*, 449 U.S. at 375. Neither is this a case in which the decision would be "effectively unreviewable on appeal from a final judgment." *See id.* For example, in *Firestone Tire & Rubber Co. v. Risjord*, the Supreme Court held that a district court's denial of a motion to disqualify counsel did not satisfy those requirements. *Id.* at 378. The Court explained that if, after trial and final judgment, a court of appeals finds disqualification was necessary, "it would retain its usual authority to vacate the judgment appealed from and order a new trial," a "remedy [which] seems plainly adequate should petitioner's concerns of possible injury ultimately prove well founded." *Id.*

Here, this is not a scenario in which a court is denying a criminal defendant the constitutional right to pretrial bail, something that would be nearly impossible to remedy if forced to wait for a final judgment in the case. *See Stack v. Boyle*, 342 U.S. 1, 4–5 (1951). Nor is this a case in which, pretrial, a criminal defendant seeks to dismiss an indictment on double jeopardy grounds, the "very nature" of which is "collateral to, and separable from, the principal issue" of whether the defendant committed the crime at issue. *Abney*, 431 U.S. at 659. In such a case, "the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence" because the Double Jeopardy Clause "guarantee[s] against being twice put to trial for the same

offense." *Id.* at 660–61. Unlike in those types of cases, the order here will be easily reviewable on appeal from a later final judgment without jeopardizing any important right of the appellants.

Appellants also fail to show that we should review their case under *Gillespie v. U.S. Steel Corp.*, which held that review of a non-final judgment "contrary to [the court's] usual practice" is appropriate when ruling is "fundamental to the further conduct of the case." 379 U.S. 148, 153 (1964). Appellants contend that the issues dismissed in the district court order here are "fundamental" to their case.[2] But that isn't so. The remaining claims—equal protection, Open Meetings violations, and ADA and RA claims other than failure-to-accommodate—can easily proceed on their own. The *Gillespie* Court held that, in deciding the question of finality, courts must balance "the inconvenience and costs of piecemeal review" with "the danger of denying justice by delay." *Id.* at 153. Here, that balance weighs in favor of denying immediate appellate review. It will be quite costly and inconvenient for our court to review multiple appeals in this case. And, on the other hand, appellants haven't demonstrated any urgent need for an opinion on the dismissed claims.

The district court's order granting in part and denying in part these motions to dismiss does not satisfy the narrow collateral-order exception to the finality rule, and this case does not present any reason to depart from this

---

[2] Appellants argue that the Supreme Court has held that an error in a Fifth Amendment takings analysis is sufficiently "fundamental" to the further conduct of the case so as to warrant immediate appeal, citing *U.S. v. General Motors Corp.* for support. *See* 323 U.S. 373, 377 (1945)). The Supreme Court didn't discuss finality in *General Motors Corp.* To the extent that it did find that the takings issue was "fundamental," the issue there differed significantly from the takings issue in this case. Here, the takings issue is one among many; whereas, in *General Motors*, the takings issue was the only merits issue. *Id.* The stakes were also much higher in *General Motors*, which involved compensation for the taking of a warehouse by the Secretary of War for military purposes. *Id.* at 375.

No. 24-30211

settled area of the law. We therefore DISMISS this appeal for lack of jurisdiction.