**In the Matter of GRAND JURY SUBPOENA OF Donald and Susan ROCHON.**

**Appeal of UNITED STATES of America.**

No. 88–1817.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1989.

Decided April 28, 1989.

Irving Gornstein, Dept. of Justice, Washington, D.C., for appellant.

Adam Thurschwell, Kairys & Rudovsky, Philadelphia, Pa., for appellee.

Before BAUER, Chief Judge, POSNER, and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

Donald Rochon is a black Federal Bureau of Investigation (FBI) Special Agent currently assigned to the Philadelphia field office. Before transferring to the Philadelphia office, Rochon worked at the FBI's Omaha and Chicago offices. In October 1984, Rochon charged in an equal employment opportunity (EEO) complaint filed with the FBI that fellow FBI employees at the Omaha office subjected him to racial harassment. In January 1986, Rochon filed a second EEO complaint, this time alleging racial harassment—including threats of death and dismemberment—by Chicago FBI employees. Three months later, Rochon sent a packet of materials concerning the Chicago incidents and a request for a criminal investigation to the Justice Department's Office of Professional Responsibility (OPR), which in June 1986 referred Rochon's charges to the Civil Rights Division (CRD), the government's enforcer of federal civil rights statutes. CRD's Criminal Section then began an investigation of Rochon's charges.

The start of the Criminal Section's investigation apparently stopped the FBI's investigation of Rochon's EEO complaint. For in July 1986, the Criminal Section asked the FBI to delay the latter and, instead, assist with the former, which the FBI did. In December 1987, after spending seventeen months investigating possible criminal activity on the part of its Chicago employees, the FBI referred the evidence it had collected back to the Criminal Section, which in turn recommended that a grand jury be empaneled.

On December 11, 1987, Rochon commenced civil actions in the federal district courts for the District of Columbia and the Northern District of Illinois. In the more-comprehensive District of Columbia action, Rochon alleged that FBI employees had subjected him to racial harassment at the Omaha and Chicago offices in violation of the First, Fourth, and Fifth Amendments, Title VII of the Civil Rights Act of 1964, and Nebraska and Illinois common law. Rochon also alleged that CRD and its Criminal Section had conducted the criminal investigation into his charges of harassment at the Chicago office in bad faith and for the purpose of delaying the resolution of his EEO complaints concerning the same incidents. Rochon named as defendants in the District of Columbia action the FBI and several of its agents, as well as the Attorney General (then Edwin Meese, III) and the Assistant Attorney General for Civil Rights (AAG) (then William Bradford Reynolds) in their official capacities.

Nevertheless, in January 1988, AAG Reynolds authorized the Criminal Section to empanel the grand jury, which began hearing evidence in February. In March, the grand jury subpoenaed Rochon and his wife, Susan Rochon, to testify. In response, the Rochons filed an emergency motion in the district court to disqualify the Attorney General, the AAG for Civil

Rights, and the entire CRD staff from participating in the grand jury investigation.

On March 23, 1988, the district court denied the Rochons' motion to disqualify CRD attorneys who are not defendants in the civil cases, 686 F.Supp. 195. The court saw "no problem in allowing them to continue with the grand jury investigation, *provided* they are willing to assure the court that they will not take directions from nor share information with the Department of Justice officials who are named defendants in the civil cases, Mssrs. Meese and Reynolds." The Attorney General and the AAG for Civil Rights, however, were a different story. The district court was troubled by "the appearance of possible impropriety" in the Attorney General's and the AAG for Civil Rights' dual roles as prosecutors and civil defendants. The court thought it "unseemly for a party to a civil lawsuit to be conducting a grand jury investigation into the identical subject matter." Moreover, in the court's view, the possibility that the Attorney General or the AAG could use information obtained from the grand jury investigation in preparing their defenses to Rochon's civil action was "undeniable." Accordingly, the court concluded that the Attorney General and the AAG "must be prevented from acquiring grand jury information that could be used in the civil case" in order to prevent a violation of Fed.R.Crim.P. 6(e).

On August 11, 1988, while the government's appeal from the district court's disqualification order was pending in this court, the district court for the District of Columbia dismissed the AAG for Civil Rights (still Reynolds) as a defendant in that civil suit. The very next day, Richard Thornburgh replaced Edwin Meese as Attorney General. In light of these developments, the government moved the district court to vacate its disqualification of AAG Reynolds from participation in the grand jury investigation, and to clarify whether its March 23, 1988 order applied to the new Attorney General, Mr. Thornburgh.[1] The district court granted the government's request as to AAG Reynolds, finding "no reason to bar Mr. Reynolds from the investigation" now that he was no longer a defendant in the civil suit and noting that the Rochons did not oppose that part of the government's motion. The court, however, refused to modify its order with respect to Mr. Thornburgh. Although the district court conceded "that a finding of [DOJ] misconduct would be no blemish on the reputation of Mr. Thornburgh," the court believed "that [its] March 23 discussion of the problems attending Mr. Meese's participation in the grand jury investigation applies with almost equal force to the proposed participation of Mr. Thornburgh."

■ This is the government's appeal from the district court's disqualification order prohibiting Attorney General Thornburgh from participating in the grand jury investigation. Before we may examine that ruling, however, we must determine whether the district court's order is immediately appealable as a final "collateral order" under 28 U.S.C. § 1291, which vests the courts of appeals with "jurisdiction of appeals from all final decisions of the district courts ... except where a direct review may be had in the Supreme Court." Normally, a party may not take an appeal under section 1291 until there has been "a decision by the District Court that 'ends the litigation on merits and leaves nothing for the court to do but execute the judgment,'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), and clearly the district court's order disqualifying Attor-

---

1. Actually, since the district court's original disqualification order of March 23 was the subject of a pending appeal in this court, the government asked the district court to indicate its probable ruling on the motion should it reacquire jurisdiction by remand. If the district court indicated a willingness to modify its dis-

qualification order, the government could then request this court to remand the case to the district court for that purpose, *see Egger v. Phillips*, 710 F.2d 292, 329 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), which it eventually did.

ney General Thornburgh does not fall into that category. The Supreme Court has, however, recognized a "narrow exception to the requirement that all appeals under § 1291 await final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). To fall within this limited class of final "collateral orders" appealable under section 1291, the district court's order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2457 (footnote omitted).

District court orders granting or denying motions to disqualify counsel in civil cases fail this test because such orders are appealable after final judgment. *Firestone Tire & Rubber Co. v. Risjord, supra,* 449 U.S. at 377, 101 S.Ct. at 675; *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). As the Supreme Court pointed out in *Firestone,* if the court of appeals in such cases concluded after trial that denying or permitting continued representation of an aggrieved party was prejudicial error, the court could vacate the judgment appealed from and order a new trial. *Id.* 449 U.S. at 378, 101 S.Ct. at 675. Similarly, pretrial orders disqualifying defense counsel in criminal cases also are not immediately appealable as "collateral orders" under section 1291. *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). In such a case, as the Court explained in *Flanagan,*

> if establishing a violation of [petitioners'] asserted right requires no showing of prejudice to their defense, a pretrial order violating the right ... is not 'effectively unreviewable on appeal from a final judgment.' If, on the other hand, petitioners' asserted right is one that is not violated absent some specifically demonstrated prejudice to the defense, a disqualification order ... though final, is not independent of the issues to be tried.

Its validity cannot be adequately reviewed until trial is complete.

*Id.* at 268–69, 104 S.Ct. at 1056–57.

An order disqualifying government counsel in a criminal case, however, is a different matter, for if it is not immediately appealable, it *is* effectively unreviewable. For example, in this case, if the grand jury declines to issue any indictments, the government could not appeal because the case would be over. If the grand jury does issue indictments and any defendants subsequently are found guilty, the government, of course, would not seek review. If, on the other hand, any defendants were found not guilty, appellate review of the district court's disqualification order would be precluded by the double jeopardy clause. *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). Thus, in the only instance in which the government would want to press an appeal, the district court's decision preventing the AG from participating in the grand jury investigation is unreviewable.

■ An order disqualifying government counsel in a criminal case, therefore, is a final collateral order immediately appealable under section 1291. It conclusively determines the disputed question—whether challenged counsel will be permitted to continue his representation. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 375, 101 S.Ct. at 674. It also resolves an important issue completely separate from the merits of the underlying action. The grand jury, of course, is considering whether Rochon's treatment at the Chicago field office should lead to the prosecution of any individual for a violation of federal law. The disqualification issue, on the other hand, focuses on the question whether the filing of a civil suit against the Attorney General alleging that the investigation into the Chicago field office incidents has been conducted in bad faith requires his disqualification from the investigation. Answering the latter does not require consideration of the former. Finally, as noted above, an order disqualifying government counsel in a criminal case is effectively unreviewable. Thus, such an order satisfies each of the *Coopers & Lybrand* requirements for appealability as a final collateral order under section

1291.[2]

■ Turning to the merits, we begin with the observation that, contrary to the Rochons' suggestion at oral argument, a federal district court order prohibiting the Attorney General of the United States from participating in a grand jury investigation is no small matter, even if the investigation could continue in his absence. Since initiating a criminal case by presenting evidence before the grand jury is " 'an executive function within the exclusive prerogative of the Attorney General,' " *United States v. Chanen,* 549 F.2d 1306, 1312–13 (9th Cir.) (quoting *In re Persico,* 522 F.2d 41, 54–55 (2d Cir.1975)), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977), such an order raises sharp separation-of-powers concerns. As the Ninth Circuit has stated, although the " 'grand jury is subject to a supervisory power in the courts, aimed at preventing abuses of its processes or authority,' " *id.* at 1313 (quoting 1 Wright, Federal Practice and Procedure § 101, at p. 151 (1969)),

> the separation-of-powers principle imposes significant limits on it. As a threshold matter, a court may not exercise any supervisory power absent "a clear basis in fact and law for doing so." ... Judicial integrity is rarely threatened significantly when executive action does not violate the constitution, a federal statute, or a procedural rule. A federal court that imposes sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere....

*United States v. Gatto,* 763 F.2d 1040, 1046 (9th Cir.1980) (citations omitted).

The government contends that the district court lacked a clear basis in law and fact for its disqualification order. It argues that, because the Rochons have not alleged that Mr. Thornburgh was personally involved in any wrongdoing, he lacks the sort of *personal,* as opposed to professional, interest in the civil litigation necessary to justify his disqualification from the criminal investigation. The government also argues that the Rochons have offered no evidence indicating that Mr. Thornburgh will defy his Rule 6(e) obligation not to pass such information on to Justice Department Civil Division attorneys actually defending the Rochons' civil suit.

Initially, the Rochons argued that Mr. Reynolds and Mr. Meese had a personal stake in the resolution of Donald Rochon's civil suit, but the applicability of those arguments to Mr. Thornburgh is tenuous. In any event, the Rochons at oral argument seemed to abandon those arguments, asserting instead that Mr. Thornburgh's putative conflict of interest involves a clash not between a professional duty and a personal interest, but between two potentially conflicting professional interests. According to the Rochons,

> [a]s the defendant in a Title VII action alleging racial harassment, the Attorney General's interest is in disproving the alleged harassing conduct and undercutting the veracity of the Rochons' allegations. As the highest supervisor of a grand jury investigation into the same claims of illegal harassment, the Attorney General's interest and duty is to investigate and bring to light the very same acts of harassment.

The Rochons contend that such a conflict is sufficient to warrant Mr. Thornburgh's dis-

---

**2.** The Fourth Circuit, too, has expressed the view, albeit cursorily, that an order disqualifying a government attorney from participating in a grand jury investigation is a final collateral order under the test set forth in *Coopers & Lybrand.* *United States v. (Under Seal),* 757 F.2d 600, 602 n. 1 (4th Cir.1985).

Moreover, like the Sixth Circuit, we do not think a prosecuting attorney should be required to place himself in contempt to secure review of his disqualification. As that court noted in holding that an order disqualifying a govern-

ment attorney was appealable as a collateral order, such conduct would only engender disrespect for the office held by the disqualified attorney, something which it ought never be required by law to endure. *United States v. Caggiano,* 660 F.2d 184, 190 (6th Cir.1981); *see also United States v. Nixon,* 418 U.S. 683, 690–92, 94 S.Ct. 3090, 3098–3100, 41 L.Ed.2d 1039 (1974) (it would be "unseemly" to require the President to disobey a court order in order to obtain review). Such a requirement also would trigger separation of powers questions.

qualification from the grand jury investigation. They also argue that a Rule 6(e) violation is the inevitable result of allowing the Attorney General to act as both a prosecutor and as a civil defendant in connection with the Rochons' charges of racial harassment on the part of Justice Department employees.

We agree with the government. To begin with, neither the Rochons nor the district court argue that Mr. Thornburgh's putative conflict of interest would violate any specific constitutional provision, statute, or rule and, as noted above, separation-of-powers principles preclude us from intruding on the Attorney General's executive prerogative in the absence of such a violation. On the other hand, existing authority supports the government's position that the Rochons must establish that Mr. Thornburgh has a personal interest in the outcome of the civil litigation to justify his disqualification from the criminal investigation. *See* 28 U.S.C. § 528 (federal statute disqualifying federal prosecutor from participating in an investigation or litigation in which he or she has a *personal,* financial, or political interest, or appearance thereof); *Marshall v. Jericho,* 446 U.S. 238, 249, 100 S.Ct. 1610, 1616, 64 L.Ed.2d 182 (1980) ("a personal interest, financial or otherwise ... may bring irrelevant or impermissible factors into the prosecutorial decision"); ABA Code of Professional Responsibility Ethical Consideration 5–2 (attorney should not participate in a case in which there is a "reasonable probability" that his "personal interests or desires" will "affect adversely

the ... services rendered the prospective client).

Clearly, Attorney General Thornburgh has no such personal interest. The Rochons do not allege that he participated in any wrongdoing; he was not even at the Department of Justice when the alleged wrongdoing took place. Moreover, that Mr. Thornburgh is a nominal defendant to the Rochons' civil suit does not mean that he has a personal interest in its outcome. The Rochons have sued Mr. Thornburgh only in his official capacity, and the Supreme Court has repeatedly held that "the real party in interest in an official capacity suit is the entity represented and not the individual officeholder." *Karcher v. May,* 484 U.S. 72, 108 S.Ct. 388, 393, 98 L.Ed.2d 327 (1987) (citing cases). An official-capacity defendant, therefore, normally has no *personal* stake in the outcome of the litigation. *Bender v. Williamsport Area School District,* 475 U.S. 534, 543–44, 106 S.Ct. 1326, 1332–33, 89 L.Ed.2d 501 (1986).[3]

██ Nor do we believe that Mr. Thornburgh's participation in the grand jury investigation will inevitably result in a Rule 6(e) violation. Rule 6(e) prohibits those participating in a criminal investigation from disclosing grand jury information to others not authorized to receive it under the rule. *United States v. John Doe, Inc.,* 481 U.S. 102, 108, 107 S.Ct. 1656, 1660, 95 L.Ed.2d 94 (1987). It does not prevent an attorney from using information that he or she legitimately obtained during a grand jury investigation. *Id.* Any use by Mr. Thornburgh of information obtained in the

**3.** This is not to say that Attorney General Thornburgh is or should be wholly unconcerned about allegations that some of his subordinates engaged in misconduct. But such allegations alone cannot be enough to overcome the presumption that he will remain true to his commitment to the impartial administration of justice. Unless the Attorney General is alleged to have participated personally in the alleged wrongdoing, "it is exceedingly improbable that [his] enforcement decisions would be distorted." *Marshall,* 446 U.S. at 252, 100 S.Ct. at 1618. If it were otherwise, why stop at the Attorney General? Why not disqualify everyone at the Justice Department from participating in the grand jury investigation? For under the Rochons' argument, it is irrelevant to the question whether the

Attorney General should be disqualified that he is a nominal defendant to their civil suit. Surely, he is not the only Justice Department employee with a reputational or professional interest in whether other Justice Department employees participated in wrongdoing of the kind alleged by the Rochons. In theory, the entire agency would be defensive about the Rochons' charges and would just as soon see them disproved. The logic of the Rochons' position, then, leads to the disqualification of all Justice Department employees and to the appointment of a special prosecutor. Yet the Rochons seek only Mr. Thornburgh's disqualification, a request somewhat inconsistent with their legal position.

**176**

grand jury investigation into the Rochons' allegations of FBI misconduct, therefore, would not run afoul of Rule 6(e).

Moreover, there is no basis for assuming that Mr. Thornburgh will defy his Rule 6(e) obligation not to pass on grand jury information to other Department of Justice attorneys. As a practical matter, since the Attorney General has been sued in his official capacity, he is a defendant in name only and the suit really is against the United States. Mr. Thornburgh, therefore, has little reason to participate personally in its defense, which in fact is being handled by the Civil Division. Even if he were to participate, a Rule 6(e) violation still is hardly inevitable. We are confident that Mr. Thornburgh is familiar with his obligation under Rule 6(e) not to disclose grand jury information to others, and that civil division attorneys are aware of their duty not to seek access to such information. In short, in the absence of any district court finding that an unlawful disclosure has occurred or of any evidence that one will occur, the district court's conclusion that a Rule 6(e) violation is inevitable is unwarranted. And even if such a violation were to occur, we are convinced that the Rochons will have available a remedy more appropriate than the disqualification of the Attorney General at the outset.

■ In sum, disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary" *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982), and in this case it is not. To the contrary, there simply is no basis in fact and law on which to ground the Attorney General's disqualification from participation in the grand jury investigation of the Rochons' charges of racial harassment on the part of FBI employees. Because the Rochons have failed completely to establish that Mr. Thornburgh's participation in the criminal investigation will violate some constitutional provision, statute, or rule, we hold that the district court exceeded its powers in prohibiting the Attorney General from performing his executive function.

The district court is REVERSED.