919 F.2d 455
 Michael L. SHAKMAN and Paul M. Lurie, et al., Plaintiffs,
v.
DEMOCRATIC ORGANIZATION OF COOK COUNTY, et al., Defendants,
and
James E. O'Grady, Sheriff of Cook County, Defendant-Appellee.
Cecil A. Partee, State's Attorney of Cook County, Appellant.
 No. 89-2771.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 29, 1990.
Decided Nov. 30, 1990.
 
 Roger R. Fross, Lord, Bissell & Brook, Cecil A. Partee, Paula M. Carstensen, Office of State's Atty., C. Richard Johnson, Schiff, Hardin & Waite, Robert Plotkin, Plotkin & Jacobs, Peter Fitzpatrick, Chicago, Ill., for plaintiffs-appellees.
 Michael J. Hayes, Asst. Atty. Gen., Office of the Atty. Gen., Daniel P. Slayden, Asst. State's Atty., David R. Butzen, Office of the State's Atty., Jerome H. Torshen, Mark K. Schoenfield, Torshen, Schoenfield & Spreyer, Edward R. Theobald, Russell J. Luchtenburg, Law Offices of Edward R. Theobald, Nancy L. Kaszak, Daniel C. Nestor, Office of Corp. Counsel, James B. Murray, Chicago, Ill., for defendant.
 Mary M. McCarthy, Daniel P. Slayden, Asst. State's Atty., David R. Butzen, Office of State's Atty., Edward R. Theobald, Russell J. Luchtenburg, Decker & Associates, Chicago, Ill., for defendants-appellants.
 Before CUDAHY, RIPPLE and MANION, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 In the court below, the district judge approved a magistrate's recommendation that the State's Attorney of Cook County be replaced by a private attorney to represent Sheriff James O'Grady in a proceeding to vacate a consent decree and injunction prohibiting a variety of patronage hiring and promotion practices. The decree had been implemented during the term of O'Grady's predecessor, Richard Elrod, and instituted reporting requirements to ensure that patronage activities did not re-emerge. In conjunction with his motion to dissolve the decree's mandates, O'Grady sought disqualification of the State's Attorney and appointment of a private attorney under an Illinois law which permits such an appointment when the State's Attorney is "interested" in a cause and is thereby precluded from fulfilling his statutory mandate.[1]
 
 
 2
 Before reaching the merits, however, we must assess jurisdiction. Because the order dismissing Partee and appointing Theobald is not a final judgment under 28 U.S.C. Sec. 1291 (1988) and because it does not meet the requirements of the collateral order doctrine, we dismiss the case for lack of jurisdiction.
 
 I.
 
 3
 In November 1986, James E. O'Grady defeated Richard Elrod in the general election for Sheriff. As successor to Elrod, O'Grady automatically became a party to the Shakman consent decree pursuant to Fed.R.Civ.P. 25(d).[2] The Shakman case restricted the patronage hiring practices of various agencies of the City of Chicago and of Cook County. A series of consent decrees emerged from the proceedings and imposed reporting and administrative requirements on several county agencies. See Shakman v. Democratic Org. of Cook County, 435 F.2d 267 (7th Cir.1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971); Shakman v. Democratic Org. of Cook County, (N.D.Ill., No. 69 C 2145, Order and Consent Decree, June 29, 1984); Shakman v. Democratic Org. of Cook County, 569 F.Supp. 177 (N.D.Ill.1983); Shakman v. Democratic Org. of Cook County, 481 F.Supp. 1315 (N.D.Ill.1979); Shakman v. Democratic Org. of Cook County (N.D.Ill., No. 69 C 2145, Consent Decree, May 5, 1972).[3] O'Grady believes that patronage practices have disappeared from the Sheriff's office and that he should therefore no longer be bound by the decree.[4]
 
 
 4
 Normally only the State's Attorney would be authorized to file such a motion on behalf of the Sheriff. But the Sheriff alleges that the State's Attorney's office cannot adequately represent him because of its demonstrated unwillingness to cooperate and a conflict of interest based on the State's Attorney's status as a defendant in the Shakman proceedings. On December 19, 1986, the Sheriff made an oral request, and on December 22, 1986, a written request, for the State's Attorney to file a motion for the Sheriff's Shakman consent judgments to be vacated. The Sheriff alleges that he requested the motion at that time to escape an upcoming deadline for reporting under the decree. The Sheriff further alleges that the requested Motion and Memorandum had not been prepared when requested, that the State's Attorney indicated initially that a potential "conflict" could prevent the office from taking the requested action and that the State's Attorney had taken positions in other cases inconsistent with those that he would be required to take in this case. Sheriff James E. O'Grady's Memorandum in Opposition to Motion of State's Attorney of Cook County to Strike Pleadings and Reply to Plaintiffs' Opposition to Motion To Appoint Special Counsel for County Officer (Record at 170-71).
 
 
 5
 On December 29, 1986, the State's Attorney's office informed O'Grady that no conflict existed and that it would represent him, and the office proceeded to file papers on his behalf. O'Grady also alleges that the pleadings filed by the State's Attorney did not include allegations that the Cook County elected officials who were members of the Democratic Organization of Cook County had violated O'Grady's rights, a statement he wanted included. Id. On December 31, O'Grady moved for appointment of Edward A. Theobald as special counsel to replace the State's Attorney, and Theobald proceeded to file pleadings on the Sheriff's behalf as well. As a result, both Theobald and the State's Attorney filed motions to vacate. The State's Attorney moved to strike Theobald's pleadings, arguing that the State's Attorney had the statutory obligation and responsibility to represent the Sheriff and that Theobald lacked any such authority.
 
 
 6
 More pleadings followed, but the dilemma was not resolved: two sets of pleadings on the motion to vacate were (and still are) before Judge Bua, as well as a motion for appointment of special counsel and the state's opposition to it. Judge Bua assigned the motion for special counsel to Magistrate Gottschall, and on June 30, 1989, she recommended that Theobald be appointed. The Magistrate reasoned that the State's Attorney's status as a defendant in Shakman met the statutory requirement of interest.
 
 
 7
 It is undisputed that the State's Attorney is a party defendant to the Consent Judgment entered on April 3, 1978, and which was amended on January 20, 1981. Shakman v. Democratic Organization of Cook County, No. 69 C 2145 (N.D.Ill.), O'Grady Reply, Ex. A. Since the office of the State's Attorney is an actual party to the lawsuit, the State's Attorney is clearly "interested in the proceedings" within the meaning of Sec. 6. Accordingly, O'Grady's Motion to Appoint Theobald should be granted. Theobald should be granted leave to file an appearance pursuant to Local Rule 3.15.
 
 
 8
 Magistrate's Report and Recommendation, June 30, 1989, at 4-5. After the State's Attorney filed objections to the report, the district judge adopted the magistrate's recommendation on July 17, 1989. This appeal followed.
 
 II.
 
 9
 The State's Attorney must first cross the hurdle of jurisdiction. The district court's disqualification order and appointment of Theobald is not an appealable final order under 28 U.S.C. Sec. 1291 and instead must meet the requirements of the collateral order exception to the final judgment rule. Under the collateral order doctrine, an appellate court can review an issue not meeting the requirement of section 1291 if the matter meets the three-part test of Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). The matter must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." 437 U.S. at 468, 98 S.Ct. at 2457 (citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)[5]).
 
 
 10
 The Supreme Court has examined disqualification of counsel under the collateral order doctrine on three occasions. For some time the circuits had split over the question whether an order disqualifying counsel, or refusing to disqualify counsel, is an appealable collateral order. See 9 J. Moore, B. Ward, J. Lucas, Moore's Federal Practice p 110.13, at 171 n. 7 (2d ed. 1990) (collecting cases). But in Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Court held that a judge's refusal in a class action to disqualify plaintiffs' lead counsel did not meet the test for a collateral order because it was insufficiently distinct from the merits and could be reviewed during the course of the trial or on appeal. The Court addressed the same issue with respect to criminal matters in Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), holding that the district court's grant of a motion to disqualify defense counsel for potential conflict of interest in a criminal case also failed to meet the requirements of the collateral order doctrine. Finally, in Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), the Court held that an order granting disqualification of counsel in a civil case likewise did not meet the standard for a collateral order. In language important for the current case, the Court held that "orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal." 472 U.S. at 440, 105 S.Ct. at 2766.
 
 
 11
 Applying the three prongs of Coopers, we find that the district court's disqualification order here fails to meet the test for appealability. The order does not conclusively resolve the issue before the court because the district court could determine at a later time that the conflict was no longer present. The order also fails to meet the second requirement of resolving an important issue completely separate from the merits of the action because one aspect of O'Grady's claim is that the State's Attorney's position as defendant requires appointment of private counsel. Finally, the third prong is also unsatisfied because the judgment would remain effectively reviewable on appeal.
 
 
 12
 The State's Attorney attempts to distinguish Koller and the above reasoning in five ways. First, the office argues that the State's Attorney's statutory and constitutional duties and authority are entirely different from a private attorney's financial, personal or professional interest in representing a client. These statutory and constitutional interests, the argument goes, would be irreparably restricted if the appeal had to await final judgment. While somewhat persuasive, this argument ultimately fails. It is true that the State's Attorney is, by statute, charged with defending the County and any State official within the County in his official capacity. Ill.Rev.Stat. ch. 34, para. 3-9005(4) (1989).[6] But it is also true that state statutes permit removal of the State's Attorney from a case in certain instances. See note 1, supra, and accompanying text. The State's Attorney's mandate is therefore not absolute, and the trial court was well within its discretion in assessing whether to appoint a replacement. The statutory and constitutional role of the State's Attorney is clearly a matter intertwined with the merits of the issue before us and is not one that goes to jurisdiction.
 
 
 13
 Second, the state argues that it would have no opportunity to appeal the disqualification order once the merits of the motion to vacate had been determined. This is simply untenable. There are two possibilities. The Sheriff may win his motion to vacate, making an appeal unnecessary. Or he may lose the motion, and the State's Attorney can assert all his current rights and prerogatives when the Sheriff appeals the denial. If the Sheriff chooses not to appeal, the State's Attorney may still petition the court to represent the Sheriff in future proceedings. As the Supreme Court observed in Firestone,
 
 
 14
 An order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not. The propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment.... [P]etitioner has made no showing that its opportunity for meaningful review will perish unless immediate appeal is permitted. On the contrary, should the Court of Appeals conclude after the trial has ended that permitting continuing representation was prejudicial error, it would retain its usual authority to vacate the judgment appealed from and order a new trial. That remedy seems plainly adequate should petitioner's concerns of possible injury ultimately prove well founded.
 
 
 15
 449 U.S. at 377-78, 101 S.Ct. at 675.
 
 
 16
 The position of the State's Attorney here sounds a familiar theme in the argument that the statutory interest in representation will be lost if the Sheriff proceeds independent of the State's Attorney. Before Coopers & Lybrand, certain courts of appeals reasoned similarly in formulating the "death knell" doctrine, a notion that class-certification orders could be immediately appealed if denial would sound the death knell for a plaintiff's interest. In Coopers & Lybrand the judge's denial of class certification sounded the "death knell" because no individual had the financial incentive to pursue the matter further, but the Court firmly rejected this rationale on a variety of grounds. 437 U.S. at 469-77, 98 S.Ct. at 2458-62. We dismiss the argument of the State's Attorney for similar reasons. Congress has established that appeal is permissible only on entry of a final judgment. Even if some of the State's Attorney's statutory interest is lost, this does not warrant an exception to the finality rule or expansion of the collateral order rule. By sounding the death knell for the "death knell" doctrine, Coopers & Lybrand removed from appellate review a number of interests that might be somewhat compromised by waiting for a decision on the merits. Coopers & Lybrand indicated that such interests are either intertwined with the merits or do not involve the irreparable injury justifying review before a final judgment.
 
 
 17
 Third, the State's Attorney argues that there would be irreparable harm because he would not be able to fulfill constitutional and statutory duties. Again, there are certain occasions contemplated by the statutes in which the State's Attorney should not represent an official because the Attorney would render less effective counsel than a substitute. The argument once again involves an issue on the merits, not an independent reason to invoke the collateral order exception. If the proceeding with a special attorney prejudices the State's Attorney's interests, this can be argued as the case proceeds or after final judgment.
 
 
 18
 Fourth, the State's Attorney argues that the taxpayers will suffer undue harm if required to pay for an appointed attorney. Once more, this is a difficult argument to reconcile with the statutory command to appoint a replacement in certain situations. The Illinois legislature must have contemplated such expenses, and surely such expenses would not be disproportionate to the obstacle created by a conflict or related problem. Moreover, fee petitions remain within the discretion of the trial judge, who can, through appropriate controls, limit expenses to levels consistent with the demands of adequate representation.
 
 
 19
 Finally, the State's Attorney argues that an order appointing an attorney may place the office in an "arguably ambiguous" position vis-a-vis other clients in similar litigation. Apparently the State's Attorney believes that this case could set in motion further disqualifications in similar consent decree challenges. However, disqualification decrees are made on narrow, fact-specific bases. While the Magistrate's report appears to sweep quite broadly--perhaps too broadly--in disqualifying the State's Attorney because of the office's status as a defendant, we believe that the substitution-of-counsel decision must also have been informed by the dispute between the Sheriff and the State's Attorney over whether there was a "conflict" during late December 1986 and early 1987. Moreover, we remind the State's Attorney that he can assert any compromised interest before this court once the judgment below is final and an appeal is taken. Replacements for the State's Attorney are not appointed en masse, and the district court's determination in each case must reflect the relationship between the party represented and the State's Attorney. Whether Sheriff O'Grady's factors appear in other cases remains for future consideration.
 
 
 20
 The State's Attorney also points to In re Grand Jury Subpoena of Donald and Susan Rochon, 873 F.2d 170 (7th Cir.1989), in which we found appellate jurisdiction for a district court's decision to disqualify the United States Attorney General from participating in a grand jury proceeding when he was also a named defendant in a racial harassment and discrimination suit. We found that the appeal met the standard for collateral order review because the government would have been precluded from any appeal if a final order was first required. The double jeopardy clause prohibited appeal in those instances where the government would want to appeal--a refusal to indict by the grand jury or an acquittal at trial. In short, "[a]n order disqualifying government counsel in a criminal case ... is a different matter, for if it is not immediately appealable, it is effectively unreviewable." 873 F.2d at 173 (emphasis in original).
 
 
 21
 Rochon was a criminal case, Shakman, a civil, and this makes the difference in terms of the collateral order doctrine. If the Sheriff loses his motion to vacate, the State's Attorney, as counsel in a civil matter, will still preserve any rights now existing for review on appeal. The Sheriff's case is, therefore, controlled by Koller more than by Rochon, and this accords with the reluctance of the Supreme Court to extend the collateral order doctrine into new areas, and especially into appointment of counsel cases.
 
 
 22
 We emphasize that we construe the determination by the magistrate and the district court very narrowly and, because of the potential delay before appeal, urge district courts to review requests for appointment or substitution of counsel with a strong presumption that the State's Attorney would provide adequate representation.
 
 
 23
 We believe that this case falls within the Firestone-Flanagan-Koller line of cases that holds that jurisdiction under the collateral order doctrine does not extend to disqualification decisions. The appeal is therefore
 
 
 24
 DISMISSED.
 
 
 
 [1]
 At the time of the Sheriff's motion, the statute provided in part:
 Whenever the attorney general or state's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the attorney general or state's attorney would have had if present and attending to the same....
 Ill.Rev.Stat. ch. 14, para. 6 (1985). This provision has been amended twice, Pub.Act 85-188 Sec. 1, 1987 Ill.Laws 1205, 1205; Pub.Act 86-962 Sec. 7-2001, 1989 Ill.Laws 6012, 6435, and now covers replacement of only the attorney general. Ill.Rev.Stat. ch. 14, para. 6 (1989). A provision using nearly identical language governs removal of state's attorneys. Ill.Rev.Stat. ch. 34, para. 3-9008 (1989).
 
 
 [2]
 Rule 25(d) provides:
 (1) When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.
 (2) A public officer who sues or is sued in an official capacity may be described as a party by the officer's official title rather than by name; but the court may require the officer's name to be added.
 Fed.R.Civ.P. 25(d).
 
 
 [3]
 The history of this dispute includes numerous other proceedings not relevant to the present matter
 
 
 [4]
 The motion for vacating the judgment filed by his special counsel states:
 All of the prior judgments and orders entered in the case without the agreement of the parties have been findings of unconstitutional conduct against the Democratic Organization of Cook County and Democrats elected to County and Municipal Offices. JAMES E. O'GRADY shall not engage in any unconstitutional employment or coercive practices which will violate or infringe upon the rights of the Plaintiffs herein or rights of the employees of the Cook County Sheriff's Office. There is no controversy between the Plaintiffs and JAMES E. O'GRADY and the availability of injunctive relief under all the judgments, decrees and orders in this case which pertain to the Sheriff's Office and Sheriff O'Grady are now moot.
 Memorandum in Support of Motion To Dismiss James E. O'Grady, Sheriff and To Vacate All Prior Judgments, Decrees and Orders Which Pertain to James E. O'Grady, Sheriff of Cook County, at 2-3 (Record at 129-30) (citation omitted).
 
 
 [5]
 Cohen, the genesis of the collateral order doctrine, contains the classic formulation:
 This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.
 337 U.S. at 546, 69 S.Ct. at 1225.
 
 
 [6]
 The duties of the State's Attorney were formerly at Ill.Rev.Stat. ch. 14, para. 4 (Supp.1988)