In re **FIRSTMARK CORPORATION** and **Capitol Securities, Inc., Debtors.**

**Virginia E. BROUWER, et al.,
Plaintiffs–Appellants,**

v.

**ANCEL & DUNLAP, et al.,
Defendants–Appellees.**

No. 94–2533.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1994.

Decided Jan. 31, 1995.

Sharon Swarsensky Bilow (argued), Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, and Hugh G. Baker, Jr. and Jeffrey R. Mitchell, Baker, Siegel & Page, Indianapolis, IN, for plaintiffs-appellants.

Steven H. Ancel (argued), Paula F. Cardoza, Ancel & Dunlap, Indianapolis, IN, David H. Kreider, Hodges & Davis, Merrillville, IN, and Terrill D. Albright, James M. Carr (argued) and Michael P. Bigelow, Baker & Daniels, Indianapolis, IN, for defendants-appellees.

Before CUMMINGS, FLAUM, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

The bankruptcy court denied the plaintiffs' motion to disqualify the defendants, counsel for the debtors and counsel for the Creditors' Committee, from further representation in this bankruptcy liquidation and refused to order counsel to disgorge the fees they had earned for work on this bankruptcy. Plaintiffs appealed that decision to the district court, which affirmed the bankruptcy court's decision in most respects. This appeal followed. We now dismiss the appeal for want of jurisdiction.

## I.

Firstmark Corporation ("Firstmark") filed a chapter 11 bankruptcy petition on August 26, 1988. Capitol Securities, Inc. ("Capitol"), which wholly owned Firstmark, also filed a chapter 11 petition the same day. On August 30, 1988, Bankruptcy Judge Otte entered orders authorizing the employment of the law firm of Ancel & Dunlap as counsel for both Firstmark and Capitol. Later, the court authorized Ancel & Dunlap's representation of Firstmark's subsidiaries, Transition Bank Asset Corporation ("Transition Bank") and Firstmark Financial Corporation ("Firstmark Financial") in their subsequently filed chapter 11 cases. On October 20, 1989, the court granted the application of the Honorable Robert H. Staton, chairman of the Creditors' Committee ("Committee"), to employ Leonard Opperman of the law firm of Bose, McKinney and Evans ("Bose McKinney") as counsel for the Committee.

Bose McKinney filed its Eighth Application for Interim Compensation and Reimbursement of Expenses on February 10, 1993. Ancel & Dunlap filed its Eighth Application for Interim Compensation and Reimbursement of Expenses on March 8, 1993. The plaintiffs, the Brouwer Group, some of whom are members of the Committee, filed objections to these applications and also

made motions to disqualify both firms from their respective representations. The bankruptcy court held a hearing on these objections and motions and ruled against the Brouwer Group on July 1, 1993. The district court affirmed this decision in all respects, except that it ordered Bose McKinney to disgorge 10% of its Eighth Application fees for its negligent failure to disclose a possible conflict of interest.

On appeal, the Brouwer Group again argues that Bose McKinney and Ancel & Dunlap should be disqualified and ordered to disgorge all of their fees, based on the following four events.

### A.

First, after the bankruptcy court authorized the employment of Opperman as counsel for the Committee, Opperman discussed the representation with one of his partners. The partner told Opperman that Bose McKinney had represented William Smith, Firstmark's former president, on several occasions in the past. However, the partner told Opperman that the firm was not presently representing Smith. With this understanding, Opperman filed the affidavit required by Bankruptcy Rule 2014, stating that he had no connection with "the debtor, creditors, [or] any other party in interest."

A few days later, however, before doing any significant work for the Committee, Opperman discovered that Bose McKinney was currently representing Smith in an unrelated action. The firm immediately terminated its representation of Smith in the other matter. Opperman then disclosed the situation to Staton. Although the Brouwer Group denies receiving this information, the bankruptcy court found, after its hearing, that Staton shared it with the Committee members. The court also found that at the time he filed his affidavit Opperman did not know about Bose McKinney's current representation of Smith. The court therefore refused to disqualify the firm or order it to disgorge any of its fees.

The district court, however, held that negligent failure to disclose a possible conflict of interest does not relieve an attorney of the consequences of that failure. Relying on *In re Trout*, 108 B.R. 235 (Bkrtcy.D.N.D.1989), the district court required Bose McKinney to disgorge 10% of the fees it had requested in its Eighth Application for Interim Compensation. Bose McKinney did not appeal this decision, although it continues to maintain that it did not fail to disclose anything prohibited by the Bankruptcy Code.

### B.

After the Morris Plan, another Firstmark affiliate, was sold, Transition Bank succeeded to its ownership of the Savannah Holiday Inn. Already in a deteriorating condition, the hotel was in danger of losing its franchise. Transition Bank subsidized the hotel, which needed new air conditioning units and suffered from a very low occupancy rate due to nearby highway construction, in the amount of $10,000 to $50,000 a month. With the bankruptcy court's approval, Transition Bank retained an outside consultant to evaluate this and other assets. The consultant recommended selling the Holiday Inn for a price between $1,200,000 and $1,500,000. Before this recommendation, only the Holiday Inn's manager, who could not finance the purchase, had offered to buy the hotel.

All parties involved determined that Transition Bank had to find a purchaser for the Holiday Inn quickly. Opperman told Staton that his son, Kim, worked for the owner of another Holiday Inn franchise. Staton instructed Opperman to contact his son to see if the son's employer, Robinson Callen, would be interested in the Savannah hotel. Before doing so, Opperman advised counsel for the Firstmark debtors, the United States Trustee, and others that he would be making the contact.

After Opperman talked to his son, Callen entered into an agreement with Transition Bank to buy the Savannah Holiday Inn for $1,525,000. Notice was provided to creditors about a March 15, 1989, hearing on the proposed sale, which the bankruptcy court later approved.

In response to the Brouwer Group's claims that Opperman's discussions with his son presented a conflict of interest requiring disqualification, the bankruptcy court first

found that Staton had advised the Committee members that Callen employed Opperman's son. The court then found that the sale benefitted the Firstmark estate, that no one involved was harmed by the contact, and that Opperman's son did not materially benefit from the sale.

The district court held that "a sale of a debtor's property to an insider is subject to close scrutiny. However, it is not bad faith per se.... [but depends] on whether [counsel] breached a fiduciary duty of full disclosure." (citing *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bkrtcy.C.D.Cal.1991)). The district court then concluded that "evidence has not been presented to convince us that the bankruptcy court committed clear error in concluding that the details of the sale were disclosed, and that the sale was beneficial to the estate." It therefore refused to sanction Bose McKinney.

### C.

The Brouwer Group next contends that Ancel & Dunlap should be disqualified as counsel for the debtors because the firm was not a disinterested party, *see* 11 U.S.C. § 327, due to its joint representation of Firstmark and Capitol. When the bankruptcy petitions were originally filed, the Brouwer Group argues, Firstmark had a fraudulent conveyance claim against Capitol arising out of the payment of a $690,000 dividend by Firstmark to Capitol during the first six months of 1988, when Firstmark incurred a net loss of over $5,000,000.

Regarding this claim, the bankruptcy court found that it originated from the transfer of a block of insurance from Firstmark's indirect subsidiary, Firstmark Standard Life Insurance Company ("Standard Life"), to National Mutual Life Insurance Company, a company controlled by Smith. Staton and an attorney representing one of the Committee members attempted to negotiate a settlement of a potential fraudulent conveyance action by Firstmark against Smith. When negotiations proved unsuccessful, the Firstmark

debtors agreed that Capitol should pursue the claim.

The bankruptcy court found that all the Firstmark Creditors had received copies of the disclosure statement accompanying Firstmark's liquidation plan in order to solicit their votes in favor of the plan. The statement specified that Capitol, not Firstmark, would assert the fraudulent conveyance claim against Smith. The Firstmark Creditors voted to approve the plan, and the bankruptcy court also approved it on November 9, 1989.[1]

The bankruptcy court further found that Capitol owed Firstmark and its subsidiaries over $3,700,000, approximately 99% of Capitol's debt, so that any recovery on the Smith claim would redound almost exclusively to the benefit of Firstmark's creditors. The court stated: "The evidence presented clearly supports the facts that Firstmark was not an appropriate party to assert a fraudulent conveyance action against William Smith, [and] that Capitol Securities was the appropriate party to assert that claim."

In reviewing the bankruptcy court's ruling, the district court first held that it agreed "with the bankruptcy court that the dual representation in and of itself does not appear to have been materially adverse to Firstmark." In regard to the fraudulent conveyance action, the court noted that Capitol's pursuit of the claim had been disclosed in the statement accompanying Firstmark's plan of liquidation. "Given that the bankruptcy court was apprised of the dual representation from the beginning of this case, and given that the failure to sue Capitol on the transfer apparently will not affect Firstmark adversely," the district court affirmed the bankruptcy court's findings.

### D.

Finally, the Brouwer Group contends that Ancel & Dunlap's actions in connection with the sale of Standard Life indicated that it was not disinterested and should be disqualified. On September 15, 1989, the bankrupt-

---

1. We note that at oral argument, Steven Ancel, counsel for the debtors, indicated that the claim against Smith had been settled for $500,000 and that this settlement had been brought before the bankruptcy court for approval on November 7, 1994.

cy court authorized the sale of all of the Standard Life stock through an auction process. The court approved the Terms of Sale, Rules of Sale, Official Bid Form, and Statement of Seller's Representations, which established the terms and conditions of the auction process.

The Brouwer Group argues that Ancel & Dunlap managed the bidding procedure in a way that benefitted Capitol and its Chief Executive Officer, Ronald Hunter, to the detriment of the Firstmark estate. Specifically, Ancel & Dunlap authorized Edward Stahl, a director and secretary of Standard Management Company, which eventually bought Standard Life, to respond to requests for information regarding the sale. The Brouwer Group asserts that Stahl hindered the dissemination of information, thus deterring potential purchasers from submitting bids and resulting in a below-value sale to Standard Management, which Hunter owned.

After the hearing, which included testimony that Ancel & Dunlap had investigated complaints about the provision of information and testimony that Hunter had been isolated from the bidding process, the bankruptcy court determined that information was provided as requested. It also held that the bidding process was conducted properly. The district court stated that Ancel & Dunlap had "pushed the envelope" of proper behavior and that the court was not "entirely comfortable with the handling of this aspect" of the case. It nonetheless found "nothing in the record to demonstrate that the bankruptcy court was clearly erroneous in finding that information was available and that the bidding process was proper." Thus, the district court refused to sanction Ancel & Dunlap.

## II.

■ The Brouwer Group contends that the bankruptcy court and district court erred in not finding conflicts of interest and grounds for disqualification in the actions of Bose McKinney and Ancel & Dunlap. Before we can reach the merits of those allegations, however, we must determine whether we have jurisdiction to hear this appeal. In the bankruptcy context, courts of appeal have jurisdiction over three types of appeals:

in our discretion, questions certified for appeal by the district court under 28 U.S.C. § 1292(b); appeals from all final decisions pursuant to 28 U.S.C. § 158(d); or collateral orders under the *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), doctrine. *In re Klein,* 940 F.2d 1075, 1077 (7th Cir.1991). This appeal was not certified by the district court, so we need only address the second two grounds for appellate jurisdiction.

### A.

■ The final decision requirement of 28 U.S.C. § 158(d) ensures, among other things, the avoidance of piecemeal appeals and promotes "efficient judicial administration" by stipulating that parties "must ordinarily raise all claims of error in a single appeal following a final judgment on the merits." *Firestone Fire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). The Supreme Court has held that, outside of bankruptcy, orders granting or denying the disqualification of counsel are not final decisions and are not immediately appealable. *Id.* at 375, 101 S.Ct. at 674; *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430, 105 S.Ct. 2757, 2760–61, 86 L.Ed.2d 340 (1985). In addition, an award of interim fees does not conclusively determine the total compensation due to counsel, so such decisions are generally not considered final. *Richardson v. Penfold,* 900 F.2d 116, 117–18 (7th Cir.1990) (citing cases); *see also* 2 *Collier on Bankruptcy* ¶ 331.03 (15th ed. 1994).

■ In bankruptcy cases, however, we read the finality requirement more flexibly due to " 'the need to tie up the many subsidiary matters that litter the road to the distribution of assets in bankruptcy. A court cannot wait until the end of the case to allow the appeal because final disposition in bankruptcy ... depends on prior, authoritative disposition of subsidiary disputes.' " *Matter of Gould,* 977 F.2d 1038, 1041 (7th Cir.1992) (citing *In re Kilgus,* 811 F.2d 1112, 1116 (7th Cir.1987)). Even using a more flexible approach, however, we do not believe that the order refusing to disqualify Bose McKinney

and Ancel & Dunlap and refusing to compel them to disgorge all of their fees is a final decision.

The bankruptcy court has not yet entered an order terminating the case, which would necessarily make all interlocutory orders final and appealable. A formal termination order is not always necessary, however, and interlocutory decisions are rendered final and appealable when only the distribution of assets remains to be finished. *See Matter of Wade,* 991 F.2d 402, 406 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993); *Matter of Northwest Engineering Co.,* 863 F.2d 1313, 1314 (7th Cir.1988). Other than to state that the liquidation is "nearly complete," the parties have failed to show this court that nothing but distribution needs to be done in this case. The liquidation plan itself indicates that more than asset distribution had to be completed post-confirmation. Indeed, Article 9 of Firstmark's plan of liquidation states that the bankruptcy court will:

> retain jurisdiction over the case for a number of purposes, including classifying and determining claims, authorizing payment of administrative expenses, determining and authorizing settlement of disputes, determining whether a default has occurred under the Plan, and entering an order terminating the case.

The parties have also failed to show this court that these disqualification and fee issues constitute the only appealable decisions left to be reviewed. Without some concrete evidence to that effect, we will not assume that no other appealable issues exist. Indeed, the fact that the fraudulent conveyance claim against Smith had not been resolved before this appeal was filed precludes us from making such an assumption.

Additionally, the order in this case does not fit any of the criteria we have previously used to determine finality in the more flexible bankruptcy context. First, it did not "resolve substantive rights of the parties in any way." *Klein,* 940 F.2d at 1077; *see, e.g., Matter of Yonikus,* 996 F.2d 866, 868 (7th Cir.1993) (orders denying or granting exemptions are final); *Kahm & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1354 (7th Cir.1990) (confirmation of plan of liquidation is a final order); *King v. Ionization Intern., Inc.,* 825 F.2d 1180, 1184 (7th Cir.1987) (decision determining priority of claims is a final order); *In re Morse Electric Co.,* 805 F.2d 262, 264 (7th Cir.1986) (acceptance and valuation of a creditor's claim is a final order). The order merely allowed the continuing employment and payment of counsel, something which did not affect any substantive rights.

Second, this order did not "mark the conclusion of what, but for the bankruptcy, would be the equivalent of a stand-alone suit." *Klein,* 940 F.2d at 1077; *see, e.g., Matter of Lybrook,* 951 F.2d 136, 137 (7th Cir.1991 (order to turn over property is a final decision); *Home Insurance Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 748 (7th Cir.1989) (declaratory judgment that insurance policy was invalid is a final order). A motion to disqualify counsel and a motion to determine fees can only be brought as part of a larger case.

Ancel & Dunlap contends that this order is nonetheless presently appealable because the alleged conflicts existed and occurred pre-confirmation so that nothing can alter the relevant legal analysis. We do not agree. Instead, we assume that many such decisions can and are made in each bankruptcy case. Appealing them immediately would eviscerate the finality requirement, something we decline to do, especially because if nothing will change the relevant analysis, we see no reason why the appeal cannot wait until the case has ended.

The majority of courts confronted with this issue have held that orders relating to the appointment or disqualification of counsel are not final in the bankruptcy context. *In re Westwood Shake & Shingle, Inc.,* 971 F.2d 387, 389 (9th Cir.1992) (appointment of counsel not final); *In re Delta Services Industries,* 782 F.2d 1267, 1271–72 (5th Cir.1986) (appointment of interim trustee not final); *In re Continental Investment Corp.,* 637 F.2d 1, 4 (1st Cir.1980) (denial of motion to disqualify counsel not final); *In re Blinder Robinson & Co., Inc.,* 132 B.R. 759, 763 (D.Colo.1991) (order disqualifying counsel not final); *In re RPC Corp.,* 114 B.R. 116, 118–19 (M.D.N.C.

1990) (denial of motion to disqualify counsel not final); *In re Global Marine, Inc.*, 108 B.R. 1009, 1011 (S.D.Tex.1988) (finding of no conflict of interest requiring disqualification of counsel not final); *Matter of PHM Credit Corp.*, 99 B.R. 762, 765 (E.D.Mich.1989) (appointment of counsel not final); *In re Philadelphia Athletic Club*, 20 B.R. 328, 331–32 (E.D.Penn.1982) (refusal to disqualify counsel not final, but district court exercised its discretion to hear appeals of interlocutory decisions); *Matter of KDI Corp.*, 18 B.R. 378, 379 (S.D.Ohio 1982) (denial of motion to disqualify counsel not final); *In re Casco Bay Lines, Inc.*, 14 B.R. 846, 847 (Bankr.App. 1 1981) (denial of motion to disqualify counsel not final); *but see In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir.1991) (order removing trustee final under flexible bankruptcy approach); *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 104–05 (3d Cir.1988) (grant of *nunc pro tunc* approval of employment of a broker final), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988);[2] *In re Albright*, 95 B.R. 560, 561 (N.D.Ill.1989) (disqualification of counsel final).

Other circuits have also agreed that interim awards of compensation under 11 U.S.C. § 331, like interim compensation awards in civil cases, are not final orders because a court can reexamine them throughout the case, until the court makes a final compensation decision. *In re Stable Mews Associates*, 778 F.2d 121, 123 n. 3 (2d Cir.1985); *In re Dahlquist*, 751 F.2d 295, 297 (8th Cir.1985) (generally interlocutory interim compensation award final where bankruptcy case had been dismissed); *In re Yermakov*, 718 F.2d 1465, 1469 (9th Cir.1983) (normally interlocutory interim compensation award final where bankruptcy counsel had been discharged from further representation); *In re International Environmental Dynamics, Inc.*, 718 F.2d 322, 325 (9th Cir.1983). Ancel & Dunlap points out that its fees, while designated "interim," were not sought under § 331, but rather were awarded under the plan of liquidation. While this may be true, nothing indicates that awards made under the plan

before final compensation is determined cannot be reconsidered at a later date, just like interim compensation awards under § 331 and in civil cases. *See Richardson*, 900 F.2d at 117–18 (citing civil cases). Thus, we see no reason why this award should be considered other than an interlocutory order.

Based on our own reasoning, as well as that of other courts, we hold that this order denying the Brouwer Group's motion to disqualify and awarding interim compensation is not final under § 158(d).

### B.

■ Alternatively, the Brouwer Group contends that we have jurisdiction over this appeal as a collateral order under the *Cohen* doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226–27, 93 L.Ed. 1528 (1949). This narrow exception to the finality requirement gives us jurisdiction over an appeal of an interlocutory order that "(1) conclusively determines a disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Simmons v. City of Racine, PFC*, 37 F.3d 325, 327 (7th Cir.1994); *Klein*, 940 F.2d at 1078. Because we do not think that this order will be unreviewable after a final judgment, it does not qualify as a collateral order.

In *Firestone Fire & Rubber Co. v. Risjord*, the Supreme Court held that a decision refusing to disqualify counsel in a civil case was not a "collateral order." 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). The Court stated that "[t]he decision whether to disqualify an attorney ... will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* The Court reasoned that requiring parties to go through another trial, should the judge later have to vacate the judgment because of an erroneous refusal to disqualify, did not present urgency requiring immediate appealability. *Id.* at 378, 101 S.Ct. at 675–76;

---

2. The Third Circuit uses a flexible approach in bankruptcy which looks to the following factors: "the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a deci-

sion on the merits, and whether the interest of judicial economy will be furthered." *F/S Airlease*, 844 F.2d at 104. We decline to adopt this approach at this time.

see also *Klein,* 940 F.2d at 1078 (order appointing trustee not collateral even though an erroneous appointment could necessitate an entirely new bankruptcy proceeding); *Matter of UNR Industries, Inc.,* 725 F.2d 1111 (7th Cir.1984) (order refusing the appointment of counsel for future asbestos claimants not collateral); *Continental Investment,* 637 F.2d at 4 (possibility of having to retry a complicated corporate reorganization not enough to necessitate immediate appealability).

In this case, no irreversible harm will befall the Brouwer Group if we do not hear its appeal at this time. If on appeal from a final judgment we should determine that the law firms should have been disqualified, the Brouwer Group simply seeks the return of all fees paid to the law firms for work on the bankruptcy case. Certainly, a court could recalculate the total compensation due and order the firms to return any fees they are not entitled to on appeal from a final judgment as easily as we could do so now. Furthermore, we do not agree with the Brouwer Group that any appearance of impropriety from allowing the continued employment of counsel authorized and approved by the bankruptcy court presents a danger of irreparable harm requiring immediate appealability. Instead, we agree with the First Circuit that, at least in most cases, the "[p]rojected harms to ... public confidence in the courts ... are [ ] inapplicable to an analysis of [a party's] ability to secure adequate review at a later date." *Continental Investment,* 637 F.2d at 5. We instead concentrate on the harm that would occur if we waited to hear this appeal until the bankruptcy case has ended. In this case the parties have pointed to, and we anticipate, none.

Once again, the vast majority of courts agree that decisions relating to the appointment or disqualification of bankruptcy counsel are not immediately appealable as collateral orders. *See Westwood Shake,* 971 F.2d at 390; *Delta Services,* 782 F.2d at 1272–73; *Continental Investment,* 637 F.2d at 5–6; *Blinder Robinson,* 132 B.R. at 763–64; *Global Marine,* 108 B.R. at 1011; *PHM Credit,* 99 B.R. at 765; *KDI Corp.,* 18 B.R. at 379–80; *Casco Bay Lines,* 14 B.R. at 848. We

therefore conclude that this decision is not appealable as a collateral order.

For the foregoing reasons, we dismiss this appeal for a lack of jurisdiction.

APPEAL DISMISSED.