In the Matter of FIRSTMARK COR-
PORATION and Capitol Securi-
ties, Incorporated, Debtors.

Appeals of Virginia E. BROUWER,
Wesley Baxter, Alberta E.
Haessig, et al.

Nos. 97–1109, 97–1193.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1997.

Decided Dec. 22, 1997.

Sharon Swarensky Bilow (argued), Michael J. Freed, Christopher J. Stuart, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, Hugh G. Baker, Jr., Baker, Siegel & Page, Indianapolis, IN, Gregory Arenson, Laurence D. King, for Plaintiffs–Appellants.

John D. Hoover, David E. Wright, Johnson, Smith, Pence, Densborn, Wright & Heath, Terrill D. Albright, Wendy W. Ponader, Baker & Daniels, Indianapolis, IN, for Defendant–Appellee Bose, McKinney & Evans in No. 97–1109.

Terrill D. Albright, James M. Carr (argued), Wendy W. Ponader, Michael P. Bigelow, Baker & Daniels, Indianapolis, IN, for Defendant–Appellee Bose, McKinney & Evans in No. 97–1193.

Charles Wharton, Office of the United States Trustee, Indianapolis, IN, for U.S. Trustee.

James M. Carr (argued), Baker & Daniels, Leonard Opperman, Kunz & Opperman, Indianapolis, IN, for Firstmark Corp. and Capitol Securities, Inc.

Before CUMMINGS, BAUER and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

These appeals are the continuation of an appeal we heard in 1994 and dismissed for want of jurisdiction because there was no final decision under 28 U.S.C. § 158(d) and because decisions relating to the appointment or disqualification of bankruptcy counsel are not immediately appealable as collateral orders. *In re Firstmark Corporation,* 46 F.3d 653 (7th Cir.1995). On January 26, 1996, the Brouwer Group* appealed to the district court from the bankruptcy court's interim fee awards to the Indianapolis law firm of Bose McKinney & Evans ("Bose"), the bankruptcy court's final report, its order denying reconsideration and its final decree. On January 6, 1997, District Judge McKinney affirmed the bankruptcy court's entry of an order closing the Firstmark Corporation bankruptcy proceeding, and on January 14, 1997, en-

---

* The Brouwer Group consists of Virginia E. Brouwer, Wesley Baxter, Alberta E. Haessig, Hardy Hicks, Jr., Natalie Hicks, Gerald J. Moss, Viola Robinette, Ruth Wilcher and Diane Siciliano, personal representative of June Yost, deceased, who were investors in and creditors of bankrupt Firstmark Corporation.

tered an order dismissing as moot the Brouwer Group's appeal from the bankruptcy court's denials of plaintiffs' motions to reconsider. The issues now raised by the Brouwer Group concern allegedly improper conduct by Bose and its former partner Leonard Opperman. Appellants ask us to remand this case for a final fee hearing before a different bankruptcy judge or to reverse and remand this case with a direction that the bankruptcy court enter a judgment directing Bose to disgorge all fees and expenses that it received while acting as counsel for the Committee of Firstmark's Subordinated Noteholders ("Committee").

Each member of the Brouwer Group invested in subordinated promissory notes of Firstmark Corporation issued in 1988. Firstmark filed a Chapter 11 bankruptcy petition on August 26, 1988. Capitol Securities, Inc., which owned Firstmark, filed a Chapter 11 petition the same day. A few days later Bankruptcy Judge Otte authorized the employment of counsel for both corporations. On October 20, 1989, the court granted the application of the chairman of the Creditors' Committee to employ Leonard Opperman of the Bose law firm as its counsel.

When Bose filed its eighth application for interim compensation and reimbursement expenses, the Brouwer Group filed objections and sought to disqualify the Bose firm. Bankruptcy Judge Otte ruled against the Brouwer Group and his decision was affirmed by District Judge Dillin although he ordered Bose to disgorge $2,250, which was 10% of its eighth application fees, for its seemingly negligent failure to disclose a possible conflict of interest.

In January 1996 Judge Otte closed the bankruptcy case. His decision was affirmed a year later in an opinion by Judge McKinney. In this appeal the Brouwer Group seeks a final fee hearing before a different bankruptcy judge. In the alternative it asks us to reverse and remand this case with a direction that the bankruptcy court enter a judgment directing Bose to disgorge all fees ($215,722.02) and expenses ($13,940.54) received while acting as the Committee counsel. We affirm the decisions of the bankruptcy and district courts in favor of Bose.

## Our 1995 opinion did not require the bankruptcy judge to conduct another hearing

■ Nothing in our opinion reported in 46 F.3d 653 required Bankruptcy Judge Otte to conduct another hearing. We agree with Judge McKinney that we imposed no such requirement in *Firstmark I*. We merely suggested that the bankruptcy court's interim fee orders could be re-examined. It was permissible for Judge Otte to determine that there was no need to revisit the earlier fee awards. The Brouwer Group has not cited any case or statute requiring a bankruptcy court to conduct a final hearing to review interim fee awards. No final hearing was mandated since the Brouwer Group intended to raise the same objections Judge Otte had heard and ruled against on six prior applications.

## The bankruptcy court's findings regarding William Smith are not erroneous

■ Brouwer contends that Leonard Opperman of the Bose firm lied when he testified about the relationship between lawyers at Bose and former Firstmark president William Smith. Smith was terminated as an officer of Firstmark in June 1988. Four months later the bankruptcy court approved the application of the Committee to employ the Bose firm. Its partner Leonard Opperman executed an affidavit stating that Bose had no connection with the debtor. Opperman was then aware that his partner Wayne Ponader had represented Smith in the past. Later Opperman discovered that Bose was representing Smith as a John Doe potential defendant in another matter. Thereupon Bose discontinued representing Smith, and Opperman reported the matter to Judge Staton, who was chairman of Firstmark's creditors' committee. Judge Staton permissibly determined that Bose's past representation of Smith did not bar Opperman's future representation of the Committee.

Subsequently Firstmark's parent, Capitol Securities, asserted a fraudulent conveyance claim against Smith and eventually recovered $400,000 from him and his co-defendant, and this amount was approved by the Brouwer Group. In view of this favorable outcome,

the Smith matter did not require Bose to disgorge any fees beyond the $2,250 the district judge imposed.

■ Opperman's son Kim was employed by Robert Callen who operated a Holiday Inn franchise. Judge Staton, chairman of Firstmark's creditors' committee, told Opperman to contact Kim to see if Callen had any interest in purchasing a Savannah, Georgia Holiday Inn, an asset of the Firstmark estate. Callen bought it for $1,515,006, which was higher than any other offer. Since, as the bankruptcy judge found, this was a "major benefit" to the Firstmark estate (Brouwer Group App. 0000195), again no disgorgement of Bose's fees was required.

### Sale of Firstmark's Standard Life

■ The Brouwer Group claims that the Bose firm should have prevented the sale of Firstmark's Standard Life Insurance subsidiary. According to the Brouwer Group, Chairman Hunter of Capitol Securities wanted to buy Standard Life through Standard Management, a company Hunter had formed. Edward Stahl, a director and secretary of Standard Management, was put in charge of disseminating information about Standard Life. Standard Management paid $11.1 million for Standard Life whereas the Brouwer Group claims that it was worth from $23.5 million to $30.3 million (Br.20). The Brouwer Group never raised this issue before Bankruptcy Judge Otte and therefore may not do so now. *Stolkin v. Nachman*, 472 F.2d 222, 226 (7th Cir.1973). Moreover, Judge Otte approved the sale after an open bidding process and extensive advertising, and after he declined to credit contrary testimony. The Brouwer Group did not establish any irregularity with regard to the Standard Life sale.

### Claims against Ernst & Young

■ The Brouwer Group urges that Bose and the accounting firm of Peat Marwick, representing the Creditors' Committee, should have taken action against the accounting firm of Ernst & Young, which had represented Firstmark in the past. After Peat Marwick refused to investigate Ernst & Young, an attorney and accountant named James C. Todderud offered to do so and wrote Bose offering to follow up and investigate. The Brouwer Group's brief states that Bose declined the offer because Todderud would not work for a contingency fee. In objecting to each of Bose's applications for fees, the Brouwer Group never brought up this matter. Moreover, Peat Marwick did participate in an investigation and analysis of potential claims against Ernst & Young. Bose considered the Todderud proposed representation and discussed it with Judge Staton, chairman of the Creditors' Committee. Finally, Todderud's senior partner refused to undertake the proposed investigation on a contingent fee basis. Bankruptcy Judge Otte was fully justified in failing to reopen these bankruptcy cases because of the Todderud matter.

### Bose was employed by a creditors' committee and therefore Section 1103(b) was not violated

■ Section 1103(b) provides as follows:

An attorney ... employed to represent a committee ... may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.

The Brouwer Group contends that Bose violated this provision by representing Smith when it was first hired by the Committee. However, Smith had been terminated by Firstmark months before the Committee employed Bose. While Capitol Securities had a potential claim against Smith, Bose's representation of Smith was not concerned with that matter, nor was Smith being represented as "an adverse interest in connection with the case."

As Judge Otte concluded and Judge McKinney agreed, Bose's representation of Smith had nothing to do with the Firstmark proceeding. Moreover, Bose disclosed to Judge Staton, Chairman of Firstmark's Creditors' Committee, its inadvertent failure to disclose its representation of Smith. As soon as Bose acquired actual knowledge of the Smith matter, it ceased representing him and so informed the Committee.

In sum, Bose did not represent Smith in any capacity in connection with the First-mark bankruptcy, nor was Smith involved in any litigation with Firstmark. As noted above, Firstmark's parent, Capitol Securities, did assert a fraudulent conveyance claim against Smith and the recovery there benefited the Firstmark estate. For these reasons, there was no violation of Section 1103(b).

While the Brouwer Group also relies on Bankruptcy Code Section 327(a), it only applies to attorneys employed by the bankruptcy trustee, whereas Bose was employed by a creditors' committee.

**Disgorgement of Bose's fee not required by Bankruptcy Rule 2014**

Bankruptcy Rule 2014 requires a professional seeking employment under Bankruptcy Code Section 1103 to execute a verified statement setting forth the person's connection with the debtor and other parties. Here Bose's Leonard Opperman executed an affidavit stating that Bose had no connection with debtor Firstmark. As soon as Opperman became aware of Bose's former representation of Smith, he disclosed the information to the Committee. He did not know of Bose's then current representation of Smith in an unrelated matter, but Bose immediately discontinued it and Opperman so reported to Judge Staton. Undoubtedly, Bose ought to have reported the newly discovered conflict to the bankruptcy court; notifying the Chairman and the Committee was inadequate. Judge Dillin, however, determined that the inadvertent failure merited only a $2,250 sanction. His decision in that regard was far from unreasonable, and no further disgorgement of fees is required.

The decisions of the bankruptcy and district courts are affirmed.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I concur in the judgment of the court.